## STATE v. PENNOYER.

One of two classes of physicians, differing only in respect to residence, cannot be subjected to the expense of obtaining a license from which the other is exempt.

INDICTMENT, for practising medicine without a license.   The defendant moved to quash.

*S. W. Emery*, solicitor, for the state.

*George E. Hodgdon*, for the defendant.

CARPENTER, J.   " It shall not be lawful for any person to practise medicine   .   .   .    unless such person shall have obtained a license from some medical society organized under the laws of this state   .   .   .
" Every medical society organized under the laws of this state shall   .   .   .    elect a board of censors consisting of three members,   .   .   .    which board shall have authority to examine and license persons to practise medicine.   .   .   .    The board shall issue licenses without examination to all persons who furnish evidence by diploma from some medical school authorized to confer degrees in medicine   .   .   .    when said board is satisfied that the person presenting such diploma has obtained it after pursuing some prescribed course of study and upon due examination.
" Each person receiving a license upon examination shall pay for the use of the society granting the same the sum of five dollars ; upon diploma, one dollar.
" If any person shall practise medicine   .   .   .    without being duly authorized as provided in this chapter   .   .   .    he shall be punished by fine of not more than three hundred dollars for each offence.
" The provisions of the preceding sections shall not apply to persons who have resided and practised their profession in the town or city of their present residence during all the time since January 1st, 1875, nor to physicians residing out of the state when called into the state for consultation with duly licensed physicians, or to attend upon patients in the regular course of business." G. L., c. 132, ss. 1, 2, 6–8.   The General Laws (by which c. 18, Laws 1875, was repealed) took effect January 1, 1879.   G. L., c. 291, ss. 1–14.   All physicians, except those who practised all the time between January 1, 1875, and January 1, 1879, and during that period did not remove from one town to another, are required to obtain a license, and pay therefor five dollars or one dollar, according as it may be issued upon examination or upon diploma.

The law cannot discriminate in favor of one citizen to the detriment of another. The principle of equality pervades the entire constitution. The bill of rights declares expressly that all government is "instituted for the general good, for the common benefit, protection, and security of the whole community, and not for the private interests or emolument of any one man, family, or class of men;" that "every member of the community has a right to be protected by it in the enjoyment of his life, liberty, and property . . . is therefore bound to contribute his share in the expense of such protection," and is "entitled to a certain remedy by having recourse to the laws for all injuries he may receive in his person, property, or character." Bill of Rights, arts. 1, 10, 12, 14. All the declarations of right are imbued with the same spirit. With them the body of the constitution is in full conformity. To secure to all as perfect equality of privilege and of burden as human wisdom permits, was the chief end sought by the framers of the instrument. To this all other purposes were incidental and subordinate. "The bill of rights is a bill of their equal private rights, reserved by the grantors of public power." *State* v. *Express Co.*, 60 N. H. 250. "The reservations could not be more clearly expressed. If the right of equality is not secured by them, it can never be secured by any written instrument. . . . The legal value of the reservations is in their ability not to suggest or advocate a theory of human rights, but to carry a theory into practical effect, and insure the enjoyment of the rights reserved." *Gould* v. *Raymond*, 59 N. H. 275.

All taxation must be equal. *Opinion of the Justices*, 4 N. H. 565; *Smith* v. *Burley*, 9 N. H. 423, 437; *Morrison* v. *Manchester*, 58 N. H. 538, 548, 550; *Edes* v. *Boardman*, 58 N. H. 580; *Carpenter* v. *Dalton*, 58 N. H. 615; *First National Bank* v. *Concord*, 59 N. H. 75, 77, 78; *Berry* v. *Windham*, 59 N. H. 288; *Robinson* v. *Dover*, 59 N. H. 521; *Railroad* v. *State*, 60 N. H. 87, 94; *Mills Co.* v. *Location*, 60 N. H. 156; *State* v. *Express Co.*, 60 N. H. 219; *Society* v. *Manchester*, 60 N. H. 342, 347; *Curry* v. *Spencer*, 61 N. H. 624; *Telephone Co.* v. *State*, 63 N. H. 167, 169; *Railroad* v. *State*, 63 N. H. 571, 573; *Boody* v. *Watson*, 64 N. H. 162; *Holt* v. *Antrim*, 64 N. H. 284. This is merely an example of the universal equality of right which the constitution secures to all. The legislature cannot by special act authorize a particular guardian of a minor to make a valid conveyance of his ward's estate, because the exercise of such a power by the legislature "is in its nature both legislative and judicial," and "under our institutions all men are viewed as equal, entitled to enjoy equal privileges, and to be governed by equal laws. If it be fit and proper that license should be given to one guardian, under particular circumstances, to sell the estate of his ward, it is fit and proper that all other guardians should, under similar circumstances, have the same license. This is the very genius and spirit of our institu-

tions." *Opinion of the Justices*, 4 N. H. 572, 573. For similar reasons the legislature cannot grant a new trial in a particular action. Such an act is "not to promulgate an ordinance for a whole class of rights in the community, but to make the action of a particular individual an exception to all standing laws on the subject in controversy." "An act which operates on the rights or property of only a few individuals without their consent is a violation of the equality of privileges guaranteed to every subject." *Merrill* v. *Sherburne*, 1 N. H. 199, 212, 214, 215; *Clark* v. *Clark*, 10 N. H. 380, 385. It cannot authorize the foreclosure of a mortgage by a method not applicable to other like mortgages (*Railroad* v. *Elliot*, 52 N. H. 387, 393, 400), require or empower some towns and not others to relieve federal military conscripts from the performance of their public duty by the payment of money, or compel some jurors to perform jury service for less compensation than is paid to others for the same service. *Bowles* v. *Landaff*, 59 N. H. 164, 194, 195; *Gould* v. *Raymond*, 59 N. H. 260, 277, 278. No one citizen or class of citizens can by law be charged with the performance of duties or subjected to burdens not by law made incumbent upon all other citizens in the same circumstances.

The fourteenth amendment of the constitution of the United States, providing that " no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . nor deny to any person within its jurisdiction the equal protection of the laws," adds nothing to the rights and liberties of the citizens of this state. It merely confirms to them by federal sanction the rights secured by the action of their ancestors a century ago. It has wrought no change in the law of the state. An enactment obnoxious to this provision of the national constitution is in New Hampshire no more ineffective than it would be in its absence.

The decisions of the federal court are conclusive on the question of the validity of statutes under the federal constitution, and are authority to be weighed on the question of their validity under the constitution of the state. In *Missouri* v. *Lewis*, 101 U. S. 22, 31, the court say, the amendment "has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." In *Barbier* v. *Connolly*, 113 U. S. 31, 52, the court say, the fourteenth amendment " undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the pre-

vention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition. . . . Class legislation discriminating against some and favoring others is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." It was accordingly held that a municipal ordinance prohibiting washing and ironing in public laundries during certain hours within certain territorial limits was not invalid. See, also, *Soon Hing* v. *Crowley*, 113 U. S. 703, 708, 709. But an ordinance regulating laundries, which confers upon the municipal officers an arbitrary power to give or withhold consent for persons to carry on the business without regard to their competency,— which makes arbitrary discrimination founded on difference of race between persons otherwise in similar circumstances,—is a violation of the fourteenth amendment. *Yick Wo* v. *Hopkins*, 118 U. S. 356. In *Hayes* v. *Missouri*, 120 U. S. 68, it was held that a statute allowing the state in capital cases fifteen peremptory challenges to jurors in cities having a population of over 100,000, while only eight are allowed in other places, is not obnoxious to the amendment. The court say (*p.* 71),—" The fourteenth amendment to the constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." In *Minneapolis Railway Co.* v. *Beckwith*, 129 U. S. 26, 29, 30, the doctrine of the foregoing cases is affirmed. " Equality of protection," says *Field*, J., " implies not merely equal accessibility to the courts for the prevention or redress of wrongs and the enforcement of rights, but equal exemption with others in like condition from charges and liabilities of every kind."

The preservation of the life and health of the people is one of the chief ends of government. The power of the legislature *to* regulate the practice of medicine by general laws applicable to all who engage in it is as unquestionable as its authority to adopt measures tending to suppress the sources of disease, to avert the spread of contagion, prevent the adulteration of provisions, the sale of unwholsome food, and to legislate in various other particulars for the protection of the public health. G. L., *cc.* 111, 112, 113, 122, 125, 126, 127, 129, 133; *State* v. *Campbell*, 64 N. H. 402; *State* v. *Marshall*, 64 N. H. 549; *State* v. *Hinman*, ante 103.

The purpose of the statute is to protect the public from the imposture and fraud of quacks and charlatans. *Gage* v. *Censors*, 63

N. H. 92, 94.   To this end all who practise medicine, and have not either obtained a license or resided and practised in some one town of the state during the prescribed period, are subjected to a fine.   Practitioners are divided into two classes,—(1) those who have and (2) those who have not resided continuously in some one town of the state during the four years beginning January 1, 1875.   The latter class must, while the former need not, pay five dollars, or one dollar, each, as the case may be, for a license, in order to continue their business.   If all physicians alike, as well those who have as those who have not resided and practised during the specified period in a single town, were required to procure and pay for a license, it may be that the statute would be open to no constitutional objection.   *State* v. *Green*, 112 Ind. 462; *State* v. *Dent*, 25 W. Va. 1.   Whether it would or not, is not now the question.   The present objection is not to the rule of evidence by which the statute requires qualification to practise to be determined.   It is not that residence and practice during the specified time in one place is made sufficient evidence of fitness—equivalent to a diploma—rendering an examination unnecessary.   It is, that of those physicians who are declared by the statute, or under its provisions are found, qualified to practise, some are and others are not subjected to the burden of obtaining a license.   Exemption from the burden is made to depend not upon integrity, education, and medical skill, but upon a continuous dwelling in one place for a certain time.   The test is not merit, but unchanged residence. It is an arbitrary discrimination permitting some and forbidding others to carry on their business, without regard to their competency, or to any material difference in their situation.   For the right to continue the pursuit of his profession, one physician is not, while another, his neighbor, who may be his equal or superior in learning, experience, and ability, is, required to pay five dollars. This is not the equality of the constitution.   The magnitude of the unequal burden is not material.   If any inequality were permissible, the discrimination might be made prohibitory, and a monopoly of the business given to physicians who have resided in a town or city for a specified time.   *State* v. *Express Co.*, 60 N. H. 219, 263; *M'Culloch* v. *Maryland*, 4 Wheat. 316, 427, 431, 432.

*Indictment quashed.*

BLODGETT, J., did not sit: the others concurred.