March 2,
1931.

OPINION OF THE JUSTICES.

At the present session of the legislature the senate passed the following resolution:

*Resolved,* That the president of the senate be and hereby is directed to obtain from the honorable justices of the supreme court their opinion upon the following question:

Do the provisions of Senate Bill No. 3, copy of which is annexed hereto and made a part of this resolution, violate any of the provisions of our state constitution?

The following answer was returned:

*To the Honorable Senate:*

The undersigned, justices of the supreme court, make this answer to the question submitted us under your resolution with reference to Senate Bill No. 3.

The bill is entitled "An Act Providing for assistance to the aged." A law making age the only test of relief would be void for a number of reasons.

It would violate the constitutional provision about pensions. (Const., Pt. I, *art.* 36). By the constitution, "Pensions are not to be granted except in consideration of actual services and never for more than one year at a time. A pension ordinarily suggests the idea of a bounty or reward for service rendered, but the term might include a grant which was a mere gratuity." *Opinion of the Justices,* 78 N. H. 617, 618. Clearly, a grant of assistance to one merely because he had reached a certain age would be a pension as thus defined, and its constitutional invalidity cannot be doubted. *Opinion of the Justices, supra.*

Such a law would also be void under the prohibition of the constitution against taxation for private purposes. The provisions that "Every member of the community . . . is . . . bound to contribute his share in the expense" of the public protection of the right to enjoy life, liberty and property (Const., Pt. I, *art.* 12), and that the "public charges of government" may be raised by taxation (Const., Pt. II, *art.* 6), have always been understood to deny power to the legislature to authorize the assignment of public funds to other than public purposes. Repeated construction to such effect is to be found. *Perry* v. *Keene,* 56 N. H. 514, 531; *Morrison* v. *Manchester,* 58 N. H. 538, 550; *Bowles* v. *Landaff,* 59 N. H. 164, 192; *Gould* v. *Raymond,* 59 N. H. 260, 275, 276; *State* v. *Company,* 60 N. H. 219, 252; *Holt* v. *Antrim,* 64 N. H. 284, 286; *State* v. *Pennoyer,* 65 N. H. 113, 115; *Canaan* v. *District,* 74 N. H. 517, 538; *Opinion of the Justices,* 76 N. H. 588, 591.

And the constitutional principle of equality of rights in other matters than taxation would be defied. "Under our institutions all men are viewed as equal, entitled to enjoy equal privileges, and to be governed by equal laws." *Opinion of the Justices*, 4 N. H. 565, 573. "The law cannot discriminate in favor of one citizen to the detriment of another." *State* v. *Pennoyer*, 65 N. H. 113, 114. Classification to be valid must reasonably promote some proper object of public welfare or interest and may not be sustained when the selection and grouping is so arbitrary as to serve no useful purpose of a public nature. *State* v. *Pennoyer, supra; State* v. *Griffin*, 69 N. H. 1.

But examination of the bill shows its title to be misleading. As its author says and as is clear on reading it: "No attempt is being made to create pensions in the proposed measure and the provisions of the bill do not provide that one shall be entitled to the benefits thereof based on age alone. On the contrary one is only eligible to the relief proposed when among other provisions he is unable to support himself, either in whole or in part, and has no relatives able to support him and responsible for his support under the laws . . .; every applicant seeking relief in this form, must be subject to all of the provisions of Section 2 of said proposed act, thus clearly bringing him within the present pauper laws, and entitled to relief."

The validity of pauper acts has never been assailed. No bounty or reward is paid nor any gratuity given, in a constitutional sense, which gives to public relief furnished under such acts any nature or characteristics of a pension. It is true that a view may be taken that public support of paupers is gratuitous. The agencies of the state have no express constitutional duty to that end. The legislature may or may not arrange for the support as it may please and any support furnished may be limited as it may see fit. But the support of paupers has long been an accepted exercise of valid authority under the police power in promotion of the general welfare. No one would think of it as condemned by the constitution because of some theory of gratuity involved. The same argument may be applied to practically all instances of support and aid furnished in carrying out a purpose or program justified in pursuance of the police power. The legislature may pass laws "for the benefit and welfare of this state," and may impose taxes for "the protection and preservation of the subjects thereof." Const., Pt. II, *art.* 5. In the avoidance and relief of pauperism the state acts for its own benefit and welfare.

Paupers may be reasonably classified. Different groups may receive varying treatment. And the establishment of such a class as

the proposed act arranges does not appear necessarily unreasonable. The prescribed age of 65 may reasonably be regarded as one when earning capacity declines and the outlook for self support becomes doubtful. And age may fairly call for some special features of treatment. Especially is the proposed limit a proper one in view of the slight difference of treatment between those thus classified and paupers in general. The age set for admission to the classification is not so arbitrary and does not establish such an arbitrary discrimination as to make it an improper adjustment in the legislative scheme of dealing with pauperism. Special provisions for dependent children (P. L., c. 109), for the feeble minded (P. L., c. 112), and for the deaf, dumb and blind (P. L., c. 115), may be cited as comparable classifications.

The question is not presented whether the proposed act would be valid if it were the only legislation in relief of paupers. The discrimination of age as a boundary between support and no support at all of paupers might be regarded as an invasion of the doctrine of equality of right. And classification upon the basis of age might upon this ground be held to be unreasonable.

The bill gives aged paupers no relief of substantial measure not already given paupers in general. As a pauper, one may properly receive support not only in a limited way to make up for his own deficiency of support but for a limited time when temporarily deprived in part or in full of his earning capacity and ability to support himself. Relief is to be furnished a poor person in need of it while the need continues. "The policy of our law has not been such as to deprive a person of all property before he can avail himself of relief." *Moultonborough* v. *Tuftonborough*, 43 N. H. 316, 319. If property cannot be disposed of without the necessity of its immediate replacement to enable its owner to live, he may be entitled to relief. *Poplin* v. *Hawke*, 8 N. H. 305.

The limit of $2,000 in value of property which the bill fixes as one test of relief is not so high that it necessarily means relief to others besides paupers. One may conceivably be worth that amount and yet be so in need of care and aid for himself and his family that he cannot dispose of his property or part of it and be able to live. And authority to legislate on the subject of paupersim is not confined to provisions of assistance. Pauperism may be suppressed and prevented as well as relieved. *State* v. *Company*, 60 N. H. 219, 257. With the safeguards in the bill of the claim for reimbursement of the support furnished and of authority to require the property to be given

as security for the reimbursement, a practical arrangement in avoidance of any gratuitous or misdirected assistance is made. In some measure an avoidance of poverty in extreme degree is accomplished, and a public expense for a private purpose is not therein to be found. The principle of legislation to prevent pauperism is illustrated in the statute directing the appointment of a guardian over one against his consent when he so squanders his estate or is so idle as to make it likely he will in time become a public charge. P. L., c. 291, ss. 4, 5.

As one of its main purposes, the implication of the bill is to provide support for aged paupers outside of poor-farms. As to paupers in general, it is not required that town paupers shall be maintained at such institutions, and town poor-farms authorized by law (P. L., c. 106, s. 2) are now nearly if not entirely a thing of the past. County paupers may be removed to the county poor-farm or any other place designated by the county commissioners. P. L., c. 107, s. 2. It is thus left to local authority to say whether or not a pauper shall be supported at a poor-farm. The bill takes away such authority in respect to aged paupers and implies that they shall not be thus maintained. The exercise of authority by the legislature as to aged paupers and its delegation to local officers as to paupers in general in this respect appears to be a reasonable incident of the classification, adapted to secure one of its objects. That aged paupers shall not be, while others may be, removed to poor-farms, does not violate the mandate of equality. It is not a favor to one class over another, but it is of public concern that the distinction should be made. The distinction is therefore a valid incidental exercise of the general authority to deal with the subject.

Whether some of the details of the bill might in their operation "reveal difficulties which are not apparent upon a consideration" of it "in the abstract" (*Opinion of the Justices*, 84 N. H. 582), is to be understood as a reservation. We cannot be sure that all possible questions of doubt have been given attention. But except for its invalidity on a ground remaining to be stated, the consideration given leads to the opinion that the bill meets constitutional tests.

The constitution contains this article: "In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity." Const., Pt. I, *art.* 37.

The bill sets up the administration of the system it establishes in the probate courts. The judge is to decide upon all applications, investigating them when deemed necessary, giving hearings thereon, and making special inquiry when probable cause of improper assistance exists. He is to issue rules and regulations for the enforcement of the act and is to keep the public informed about the workings of the system. Orders for payment of assistance are to be given by him. He may seek the advice and assistance of the attorney-general or county solicitor. The register of probate, besides doing the recording work in the administration of the act, is made trustee of the property of paupers aided when the judge orders it thus transferred.

Nothing could be clearer to show the executive character of the authority the bill undertakes to assign. It transfers a part of the authority heretofore exercised by county commissioners and town and city overseers of the poor, whose status as executive officers is not open to question. It erects a structure in the well known form of a governmental agency usually designated as a commission.

Its functions are administrative. To be sure, many things to be done call for the exercise and passing of judgment, and the law ordinarily regards such things as judicial acts. But the judicial character of acts does not test the department of government to which they are assignable.

While the line of division between the departments may be difficult to draw with precision and accuracy, there is no difficulty here in assigning the bill as giving authority clearly belonging to the executive branch. Speaking broadly but definitely enough for present purposes, the judicial department is confined to courts of justice established to interpret laws and decide disputes. Judicial tribunals "decide upon the legality of claims and conduct." *Merrill* v. *Sherburne*, 1 N. H. 199, 204. The executive department is the active agency to carry laws into effect and enforce them. The commission set up by the bill unquestionably belongs to it. Administration of a law is placed under its charge and committed to it. The bill proposes that a court of justice shall be a branch of the executive department of the state government, in respect to its subject-matter.

As the constitution implies, "the three essential powers" cannot be completely separated. In the nature of things there must be some overlapping. Courts may have some administrative powers and executive agencies may have some judicial powers. But such powers may be only attributes of an ancillary character to give efficiency to the activities of the department to which they are attached. The

"chain of connection" is to be a chain of links and not a number of disassociated parts. It was recognized that complete rigidity of separation would impair efficiency. But no such situation is here presented. The judicial department can require no power to administer laws relating to pauperism to make its purposes effective, and such laws cannot require administration by the courts to give pauperism efficient treatment. The subject must be classed as one for executive dealing, and is not within any uncertainties of border-land boundaries.

It may not be successfully urged that the bill sets up a commission separate from a court, on the view that while the judge of a court is placed in charge of the commission, the court itself has no such charge. It is not a case of the same person having unrelated public duties, one as a judicial and one as an executive official. While a judge of probate may hold one other office of profit (Const., Pt. II, *art.* 94), the bill does not create a new office. It gives the probate courts additional functions and imposes on them new duties. The judge of the court is to administer the law as a part of his official duty in that capacity. His duty to enforce the law is imposed by force of his appointment and tenure as a judge, and the duty, being his as judge, belongs to the court of which he is judge.

The scheme of the bill to place its execution in charge of the court rather than of individuals who happen to be its officers, is apparent. Its general frame as well as particular provisions show this. The undertaking planned by the bill is to be carried on by the organized establishment of the court. Not only are its officers to do the work by virtue of their official positions, but they are to do it in the exercise of them. Consistently throughout the bill reference is to the judge as the one to execute the law, and not to the person who is the incumbent of the office. Certain recording and other duties are assigned the register of probate in the same manner. And compensation for their service is by increase of their salaries as officers of the court. The conclusion is that they are to execute the proposed law as such officers and not because they hold their offices. To take any other view would be to disregard the spirit of the constitution and to countenance an evasion in respect to one of its most important principles.

Cases in which questions of this nature have arisen are not of frequent occurrence. There has been but little disposition to confer executive power on the judiciary. In two cases this court has declined to exercise legislative duties sought to be assigned to it. *In re School Law Manual*, 63 N. H. 574; *In re Probate Blanks*, 71 N. H. 621. But

cases too numerous to warrant citation are to be found of legislative attempts to exercise the power of the judiciary. In all instances denial of such power has been determined or advised.

In 1818 the court in *Merrill* v. *Sherburne*, 1 N. H. 199, 208, 209, explained the reason for the constitutional separation of powers in this paragraph: "It was well known and considered, that 'in the distinct and separate existence of the judicial power consists one main preservative of the publick liberty'; that, indeed 'there is no liberty, if the power of judging be not separated from the legislative and executive powers'. In other words that 'the union of these two powers is tyranny': or, as Mr. Madison observes, may justly be 'pronounced the very definition of tyranny'; or, in the language of Mr. *Jefferson*, 'is precisely the definition of despotick government'."

Since then recognition of the separation of the three departments as a vital and underlying principle in our form and structure of government has been uniformly and consistently given, and the force of the principle remains to-day unimpaired.

Because the bill does not observe this principle, it is our opinion that it proposes an invalid law.

> Robert J. Peaslee.
> Leslie P. Snow.
> John E. Allen.
> Thomas L. Marble.
> Oliver W. Branch.

March 2, 1931.

*Matthew J. Ryan* (by brief and orally), for the bill.