Request of the Senate,
No. 4769.

OPINION OF THE JUSTICES.

Submitted June 30, 1959.

Answer returned July 9, 1959.

The following resolution adopted by the Senate on June 23, 1959, was filed in this court on June 24, 1959.

"WHEREAS, There is now pending before the General Court, Senate Bill No. 123, An Act relative to appointment of public utilities commissioners, and

"WHEREAS, There is a question as to whether said bill is in violation of constitutional principle of separation of powers contained in Part [I], Article 37 of the New Hampshire Constitution, therefore be it

"RESOLVED, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following question:

"Whether legislation assigning to the Supreme Court the duties of making appointments to the public utilities commission is constitutional?"

The following answer was returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court submit the following answer to the inquiry contained in your resolution with reference to Senate Bill No. 123, entitled "An act relative to appointment of public utilities commissioners." The act provides that appointments to the Public Utilities Commission shall be made by the Supreme Court and your inquiry is whether this proposed bill violates the separation of powers provision of N. H. Const., Pt. I, *Art.* 37th, that reads as follows: "[Separation of Powers.]

In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity."

The separation of powers between the legislative, executive and judicial branches of the government is an important part of its constitutional fabric. *Opinion of the Justices,* 85 N. H. 562; *Opinion of the Justices,* 87 N. H. 492. One of the purposes of this article is to protect each of the three branches from encroachment by the other, and as applied to the judiciary its primary purpose is to protect it from legislative encroachment rather than to circumscribe its functions within strict limits. *Attorney General* v. *Morin,* 93 N. H. 40. It is recognized that the three branches of the government "cannot be completely separate," and in "the nature of things there must be some overlapping." *Opinion of the Justices,* 85 N. H. 562, 567. As was said in that opinion, "Courts may have some administrative powers and executive agencies may have some judicial powers."

Both the Supreme and Superior Courts over a long period of our history have been given certain administrative duties and appointive powers. *Wyman* v. *DeGregory,* 101 N. H. 171, 176, 177, appeal dismissed, 360 U. S. 717 (June 29, 1959); *Attorney General* v. *Morin,* 93 N. H. 40. Thus, the Superior Court for more than a century has been delegated power by the Legislature to fill vacancies in county offices (RSA 64:9), and since 1872 has appointed auditors for each county. RSA 25:1. For more than three-quarters of a century the Supreme Court has been delegated statutory power to appoint members of the Tax Commission. Laws 1878, *c.* 73; RSA 71:2; RSA 112:2. Recently the Legislature has authorized the Supreme Court to appoint members of the Ballot Law Commission in the event of a temporary vacancy. Laws 1959, *c.* 147. These are examples of nonjudicial powers involving executive attributes but they are not considered in violation of the separation of powers doctrine, since they do not interfere with, or encroach upon, the judicial functions of the court. *Massett Building Co.* v. *Bennett,* 4 N. J. 53, 57. As was said in that case "The doctrine of separation of powers is not peculiar to New Jersey; it exists in one form or another in almost every American constitution; and it has nowhere been construed as creating three

mutually exclusive watertight compartments. To do so would render government unworkable and the slave of a doctrine that has for its beneficial purpose of prevention of despotism that inevitably results from the concentration of all the powers of government in one person or in one organ of government."

Our Constitution provides that certain state officials may be appointed or elected only in a certain manner. Thus, New Hampshire Constitution, Part II, Article 67 provides that the Secretary of State and the State Treasurer shall be chosen by joint ballot of the Senate and the House. This is an exclusive method which cannot be changed by the Legislature. Judicial officers, the Attorney General, coroners and military officers must be appointed by the Governor and Council and no change can be made in that method of selection. N. H. Const., Pt. II, *Art. 46.* As to the remaining officers the Constitution is clear that the Legislature has the power "to name and settle biennially, or provide by fixed laws for the naming and settling, all civil officers within this state." N. H. Const., Pt. II, *Art. 5th.* The only limitation on this provision is in Part I, Article 37, and this latter article has continued to receive a practical construction. *Attorney General* v. *Morin,* 93 N. H. 40. See *Wyman* v. *DeGregory,* 101 N. H. 171, 176, 177, appeal dismissed, 360 U. S. 717 (June 29, 1959); *Opinion of the Justices,* 96 N. H. 513. Since the Legislature has the power to select Public Utilities Commissioners it has the power to delegate the appointing power either to the Governor and Council or the Supreme Court. *State* v. *Railroad,* 77 N. H. 425. Inasmuch as this delegation does not interfere with judicial duties it is not in violation of Part I, Article 37 of the Constitution.

It is to be remembered that the development of administrative law came about only because the separation of powers doctrine was given a practical and workable application. This has been convincingly demonstrated by leading authorities. 1 Davis, Administrative Law Treatise, *s.* 1.09 (1958). A statement of Mr. Justice *Holmes* in *Springer* v. *Philippine Islands,* 277 U. S. 189, 211, is pertinent: "It does not seem to need argument to show that however we may disguise it by veiling words we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into watertight compartments, were it ever so desirable to do so, which I am far from believing that it is, or that the Constitution requires."

An acknowledged authority, Dean Pound, in his recent definitive

work has this to say about the separation of powers: "There are governmental powers of doubtful classification, which may be held properly to belong to either of more than one department of government. In such cases it is a legislative function to assign the power to one of the appropriate departments. Before this had been perceived and while many courts were obstinately insisting that every item of governmental action must be referred exclusively to some one of the three departments provided by the Constitution, the analytical approach to the constitutional separation of powers proved a serious obstacle to the development of administration." II Pound, Jurisprudence, *pp.* 330, 331 (1959).

We conclude that the proposed legislation is consistent with Article 5th, Part II, of the Constitution, and is not in violation of the letter or spirit of Part I, Article 37th, and therefore Senate Bill 123, if enacted, would not be in violation of the Constitution.

FRANK R. KENISON.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

July 9, 1959.

*To the Honorable Senate:*

I cannot very well differ with my associates concerning what provisions of the Constitution are pertinent. N. H. Const., Pt. I, *Art.* 37th; Pt. II, *Art.* 5th. I nevertheless find myself in disagreement with them as to the constitutionality of Senate Bill 123. While the bill, if enacted, would perhaps not be strictly in the nature of an encroachment upon the constitutional prerogatives of the judicial branch, since it would take away no powers, it would in my judgment impose nonjudicial duties upon the court, inconsistent with its functions and with the form of government sought to be perpetuated by *Art.* 37th.

The appointment and removal of civil officers is essentially an executive function. *State ex rel* v. *Brill,* 100 Minn. 499; *Opinion of the Justices to the Senate,* 300 Mass. 596, 599; *Application of O'Sullivan,* 117 Mont. 295. While courts may at times exercise administrative or executive powers (*Opinion of the Justices,* 85 N. H. 562, 567), they may do so only when the exercise of such

powers is necessary or reasonably incidental to the fulfillment of judicial duties. See *Opinion of the Justices,* 87 N. H. 492, 493, 495.

The Massachusetts cases clearly illustrate the distinction. Appointment and removal of officers is normally beyond the constitutional powers of the judiciary. *Case of Supervisors of Election,* 114 Mass. 247; *Boston* v. *Chelsea,* 212 Mass. 127; *Opinion of the Justices to the Senate, supra.* But where the power is "intimately connected with and incidental or auxiliary to the exercise of strictly judicial powers," or relates to "officers whose duties are closely connected with the judicial work of the court," it may constitutionally be exercised by the courts. *LaChapelle* v. *United Shoe Machinery Corp.,* 318 Mass. 166, 170; *Opinion of the Justices to the Senate, supra,* 598, 599. It then "falls within the considerable number of subsidiary duties which may be exercised by the Justices without going outside those which pertain to the judicial faculty." *Opinion of the Justices to the Senate, supra,* 598.

I am presently unable to satisfy myself that the appointment and removal of Public Utilities Commissioners may be said to fall within the limited sphere in which the judicial branch may properly exercise powers fundamentally executive. The powers and duties of the commissioners themselves are primarily legislative and administrative in character. See *State* v. *Railroad,* 77 N. H. 425; *Keller* v. *Potomac Elec. Co.,* 261 U. S. 428, 440. If the judiciary may be charged with their appointment and removal it may with equal propriety be charged with the appointment and removal of other administrative officers and employees. Any purpose by such a method of appointment to shield the appointments from political influences is likely to defeat itself by subjecting the courts to the influences sought to be avoided. This in my opinion Article 37th of the Constitution was in part designed to avoid. See also, Const., Pt. I, *Art.* 35th. Chief Justice *Cardozo,* speaking for the New York Court of Appeals in *Matter of Richardson,* 247 N. Y. 401, 420, succinctly stated: "The policy at the root of the constitutional prohibition . . . is to conserve the time of judges for the performance of their work as judges, and to save them from the entanglements, at times the partisan suspicions, so often the result of other and conflicting duties." See also, *Oates* v. *Rogers,* 201 Ark. 335, 346.

I conclude that "there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfillment of judicial

duties"(*Matter of Richardson, supra,* 410), and that the appointment and removal of Public Utilities Commissioners are duties which do not fall within the exception to the general rule, and with which the Legislature may not charge the courts without violation of the Constitution, Pt. I, *Art.* 37th. It is therefore my opinion that Senate Bill 123 if enacted, would be unconstitutional.

LAURENCE I. DUNCAN.

July 9, 1959.

*Paul A. Rinden,* Senate counsel, in favor of a negative answer.