Personnel Commission
No. 7155

JAMES H. HUNT

v.

PERSONNEL COMMISSION

December 31, 1975

*Cleveland, Waters & Bass* and *Robert T. Clark (Mr. Clark* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Charles G. Cleaveland,* assistant attorney general *(Mr. Cleaveland* orally), for the defendant.

GRIFFITH, J. This is an appeal by petition, pursuant to RSA ch. 541, seeking review of a personnel commission determination that the separation of plaintiff James H. Hunt from his position in the classified state service was proper.

Prior to his termination, the plaintiff was a full-time non-probationary, classified employee of the New Hampshire Department of Insurance, holding the position of life actuary. On July 17, 1974, the then insurance commissioner, Mr. Francis E. Whaland, met with the plaintiff personally to inform him of his conclusion that the position of life actuary was unnecessary for the proper functioning of the insurance department and that it would therefore be eliminated.

In a letter dated August 14, 1974, with reference to the conference of July 17, 1974, Mr. Hunt wrote the commissioner in part as follows: "On July 17, 1974, I attended a meeting in your office with you and Deputy Commissioner Fraser at which you informed me that you had decided to eliminate my position of Life and Health Actuary. You indicated that, in your judgment, the position was unnecessary. You said that many Insurance Departments, especially in the less populated states, have no life and health actuary. You stated that the action you proposed to take was not directed at me personally, but rather was in keeping with the Governor's directive to you at the time of your appointment to run an efficient operation. You added that I would not be replaced by anyone.

" . . . .

"In the time since that meeting, I have given much thought to the problems associated with seeking new employment. It seems clear to me that any prospective employer will have a particular interest in the reasons for termination of my employment with the State of New Hampshire. For this reason, I hereby request that you confirm to me in writing that the reasons for your proposed action are as set forth herein."

The commissioner's only response to this letter was as follows in a letter dated August 23, 1974: "Effective September 9, 1974, the position of Life Actuary will be abolished in this Department."

The plaintiff appealed to the personnel commission, arguing that the commissioner's attempt to dismiss him was without effect, inasmuch as the power to abolish positions rests solely with the legislature unless otherwise specifically delegated. While the plaintiff conceded that the commissioner had the power to lay him off for lack of work, he contended that in this instance, the commissioner's action could not properly be so characterized due

to his failure to comply with applicable provisions of the rules of the department of personnel.

The personnel commission denied the plaintiff's appeal in a letter dated October 15, 1974. The commission stated as its opinion that department heads do have the authority to abolish positions, and found that in any event the commissioner's action was a proper layoff for lack of work, and met the requirements of section 5, rule VIII of the rules of the department of personnel. Plaintiff's request for reconsideration was similarly denied by the commission, and this appeal followed.

The questions of law before this court are twofold: First, did the commissioner have the authority to abolish the position and, if not, was the personnel commission correct in characterizing his action as a proper layoff within the meaning of section 5, rule VIII.

There can be no doubt that absent specific delegation, the power to abolish positions rests only with the general court. Such is the clear import of part II, article 5 of the New Hampshire constitution, which vests in the legislature the authority to name all civil officers (with exceptions not material to this case), and to define their duties and powers. *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974). While it is true that the legislature could delegate its authority to abolish positions to a department head, the legislature when making similar delegations in the past has done so expressly and for only a specifically limited period of time. *See, e.g.,* Laws 1955, 338:3; Laws 1957, 320:5; Laws 1959, 268:10, :11. There is no such authorization applicable to the instant case. *See* RSA 98:13 X.

That the legislature never intended department heads to have the power to abolish positions created by the general court is further indicated by the statement in the operating budget for the fiscal years 1976 and 1977 (Laws 1975, ch. 505:39) that within the insurance department the classified position of life actuary is "hereby continued." The legislative history clearly reveals that by using this language, the legislature was in effect declaring null and void the commissioner's attempt to abolish the position. *See* Minutes of February 25, 1975, House Appropriations Committee, Departmental Budget Hearings. The legislative intent in this regard is made still more apparent in a letter from the cochairmen of the committee of conference on House bill 777 (later to become Laws of 1975, ch. 505) to the director of the department of personnel, which states "At no time is a department head authorized to abolish a ... position ... authorized by the legislature."

The personnel commission was similarly in error in finding that the commissioner's action was properly characterized as a valid layoff. The requisite procedure for laying off an employee is explicitly set forth in rule VIII, section 5 of the rules of the department of personnel. Subsection C of section 5, entitled "Notice of Layoff", requires that affected employees be given *"written* notice . . . of any proposed lay-off and *reasons* therefor, at least fourteen (14) calendar days before the effective date thereof." (Emphasis added.) Although written notice was admittedly received by the plaintiff herein seventeen calendar days before the effective date of termination, the bare statement that the position was to be abolished did not constitute a "reason" so as to satisfy the requirement of subsection C. "Reasons" are the circumstances, the proofs, the facts or the motives, which generate the conviction that there ought to be a layoff. A statement of the reason or reasons for the layoff must be a full and fair answer to the question why the layoff was made. Consequently, it must be somewhat definite and detailed. *McKenna v. White,* 287 Mass. 495, 498, 192 N.E. 84, 85 (1934); *Underwood v. Board of County Comm'rs,* 103 Md. 181, 186-87, 63 A. 221, 223 (1906).

To hold that subsection C was satisfied by the letter of August 23 would be to negate the manifest intent of the provision that a removal from an appointive office be accompanied by a written statement of the reasons therefor. Such a provision has a dual purpose. Firstly, it inhibits public officials from making unwarranted, prejudiced or wrongful removals by imposing immediate, complete and permanent publicity of the true grounds and motives underlying the action. *McKenna,* 287 Mass. at 498, 192 N.E. at 85. Secondly, it protects employees whose standing in the employment market might otherwise be seriously jeopardized. A statement of reasons precludes any possibility of an assumption by the public that a competent employee, laid off for reasons of economy, was terminated because of lack of ability, or other failings which would hamper his efforts to obtain reemployment. *Underwood,* 103 Md. at 186, 63 A. at 223.

The commissioner's failure to respond to the plaintiff's request for the reasons for his layoff deprived the plaintiff of the protection to which he is clearly entitled by the rules of the personnel commission. Where suspensions or layoffs are regulated by statute or by authorized civil service rule, the procedure provided by the statute or rule must be followed. *See* H. Kaplan, The Law of Civil Service 207 (1958).

Accordingly, the decision of the personnel commission is set aside.

*Appeal sustained.*

All concurred.