Personnel Commission
No. 7596

# W. GRANT MCINTOSH

## v.

## PERSONNEL COMMISSION OF THE STATE OF NEW HAMPSHIRE

### April 29, 1977

*Cleveland, Waters & Bass* and *Robert T. Clark,* of Concord (*Mr. Clark* orally), for the plaintiff.

*David H. Souter,* attorney general, and *James C. Sargent, Jr.,* assistant attorney general (*Mr. Sargent* orally), for the defendant.

DOUGLAS, J. We are asked herein to review, pursuant to the standard of RSA 541:13, the ruling of the personnel commission that the plaintiff's removal from his position as director of the office of manpower affairs was a valid layoff for reasons of economy and efficiency and not, as alleged, a retaliatory discharge inspired by political motives. For the reasons which follow herein, we affirm the commission's finding.

On January 2, 1976, the plaintiff received a letter from James J. Barry, commissioner of the office of manpower affairs [hereinafter OMA], informing him that effective January 19, 1976, Mr. McIntosh would be laid off from his position. The letter stated that the layoff was motivated by a desire to streamline the agency, in that there were too many top level administrators in OMA.

Prior to the layoff the plaintiff, then third in the office chain of command after the commissioner and the deputy commissioner, had worked in the manpower area for two separate periods totalling something over three years. The layoff came approximately two months after Mr. McIntosh gave testimony at a hearing before the Senate Select Committee to Study the Operation of State Government. Both before the personnel commission and again in the instant action, the plaintiff maintained that the underlying reason for his separation was not his superior's stated desire for efficiency,

but rather the commissioner's dissatisfaction with Mr. McIntosh's testimony before the Senate Select Committee.

The plaintiff's first argument deals with the allocation of the burden of proof at the personnel commission hearing. Pursuant to RSA 98:15, which authorizes the commission to establish "such reasonable rules of procedure . . . as it deems advisable," the commission promulgated rule VIII, section 4, providing: "Nothing in this section shall be interpreted as preventing the Commission from upholding the recommendation of the appointing authority since the burden of proof is upon the appellant." The plaintiff bases his argument on the premise that his expectation of continued employment, arising from his status as a permanent employee, qualified as a property right protected by the due process clause of the fourteenth amendment to the Federal Constitution. He contends that the allocation to him of the burden of proof is inconsistent with the dictates of due process applicable in this case.

■ This argument is disposed of by our decision in *Nason v. Personnel Commission*, 117 N.H. 140, 370 A.2d 634 (1977), wherein it was held that the extent of an employee's property interest in his employment, and consequently the degree of due process attendant upon his separation therefrom, is determined by applicable state law. *See Bishop v. Wood*, 426 U.S. 341, 344–45 (1976); *Arnett v. Kennedy*, 416 U.S. 134, 151 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). In this instance, the personnel commission has determined that the burden of proof in a personnel commission removal hearing shall be upon the employee challenging the layoff, rule VIII, § 4, and under the circumstances of this case, due process considerations do not dictate otherwise. *Bishop v. Wood supra*. Indeed, the rule's allocation of the burden is consistent with common law principles pertaining to the placement of the burden of proof in civil litigation, *see Jodoin v. Baroody*, 95 N.H. 154, 59 A.2d 343 (1948), and usual administrative practice. K. Davis, Administrative Law Text § 14.12 (3d ed. 1972); 1 F. Cooper, State Administrative Law 355 (1965); 4 E. McQuillin, Municipal Corporations § 12.246, at 280 (3d ed. 1968); *see Greco v. Smith*, 40 N.J. Super. 182, 122 A.2d 513 (1956); *Schnipper v. Township of North Bergen*, 13 N.J. Super. 11, 80 A.2d 118 (1951); *Gaul v. Philadelphia*, 384 Pa. 494, 121 A.2d 103 (1956).

■ The plaintiff next takes issue with the adequacy of the notice of layoff received by him, which he contends failed to satisfy

the requirement set forth in *Hunt v. Personnel Commission*, 115 N.H. 713, 349 A.2d 605 (1975), that such notices be "somewhat definite and detailed," providing a "full and fair answer to the reason why the layoff was made." The plaintiff's reliance herein on *Hunt* is misplaced, however, for in that case the notice of layoff failed to provide the employee with any reason whatsoever for his separation. In the instant case, to the contrary, the notice of layoff informed Mr. McIntosh (1) that the commissioner was concerned about the organizational structure of OMA; (2) that in his opinion the agency had too many top level supervisors for one of its size; (3) that his view was shared by members of the Senate Select Committee to Study Operations of State Government; (4) that he desired to streamline the agency and increase its efficiency; (5) that he and the deputy commissioner would absorb the plaintiff's workload; and (6) that the layoff was made without prejudice and was not for disciplinary purposes. Such notice fully apprised the plaintiff of the reasons for the commissioner's action, and accordingly is sufficient under the standard set forth in *Hunt*.

 Plaintiff's next argument, concerning the adequacy of the personnel commission's findings of fact, generates similar analysis. We held in *Foote v. State Personnel Commission*, 116 N.H. 145, 355 A.2d 412 (1976), wherein the commission denied a state employee's appeal without making any specific findings of fact at all, that such findings were necessary in order to enable this court to review the commission's action. That holding has no bearing herein, however, for the findings in the instant case, consisting of eight paragraphs, provide us with an ample basis from which to judge the commission's action.

 The plaintiff next maintains that Commissioner Barry had no power to lay him off, in that the commissioner was not properly constituted as the plaintiff's "appointing authority" within the meaning of rule VIII, section 5 of the personnel rules. This argument rests upon the circumstances under which the office of manpower affairs was established. Effective July 6, 1973, the legislature authorized the Governor alone to "participate" in the federal manpower program. Laws 1973, 589:12.

On November 2, 1973, the Governor, acting alone, issued Executive Order No. 73–24, by which all previous instructions or orders relating to the office of manpower affairs were terminated, and the OMA was designated "as the single State agency" to administer

designated manpower related programs. The Executive Order further established that a commissioner appointed by the Governor, to serve at his pleasure, was to head the agency. *See Jeannont v. N.H. Personnel Comm'n*, 116 N.H. 376, 359 A.2d 638 (1976). The plaintiff argues that Executive Order No. 73–24, issued as it was without action by the Council, is an invalid exercise of the appointment authority delegated by the legislature under RSA 124:4, and that the commissioner, being therefore invalidly appointed himself, cannot act as the plaintiff's "appointing authority" for the purpose of laying him off pursuant to rule VIII, section 5.

Without reaching the question of the effect of this argument on the validity of the plaintiff's own appointment, we hold that any defect accompanying the original issuance of Executive Order No. 73–24 has been remedied by the subsequent ratification of both the legislature and the Council. Subsequent to the November 2, 1973 date of the Executive Order, the legislature indicated its recognition of the agency as established therein by continuously appropriating funds for the "Office of Manpower Affairs" for the fiscal years 1974 through 1977. *See* 1975 Operating Budget, N.H. Laws of 1975, Chapter 505, at 13–15. Similarly, Council ratification of the order, and the commissioner's method of appointment thereunder, has occurred through the subsequent approval by the Council of numerous contracts executed by Mr. Barry as commissioner of the agency. *See* Minutes of Governor and Council Meetings for the following dates in 1976: January 7 and 21; February 4; March 3 and 31; April 14; May 5, 13 and 26; June 9, 23 and 30; July 14 and 28; August 11 and 25; September 16; October 13; and November 4. Accordingly, we find that Commissioner Barry was properly appointed as head of OMA, and therefore was the plaintiff's appointing authority for purposes of taking action pursuant to rule VIII, section 5 of the personnel rules.

■ Given our holding herein that the notice of layoff was adequate and that the commissioner was properly constituted as Mr. McIntosh's appointing authority, it is unnecessary for us to respond to the plaintiff's contention that the personnel commission erred in its refusal to consider these questions at the outset of the proceedings. Our purpose herein is to decide whether the personnel commission's finding that the plaintiff was laid off for reasons of efficiency should be vacated, which we may not do unless the record indicates, by a clear preponderance of the evidence, that the commission's decision is unjust and unreasonable. RSA 541:13. The

record does not warrant such a finding in this case where no less than four persons, the chairman of the Senate Select Committee to Study the Operation of State Government and the plaintiff himself among them, testified that the duplication of top level administrative functions in the office of manpower affairs was a matter of serious concern. For us to inquire further, as the plaintiff would have us do, into such questions as which OMA administrator would have been the best to remove or whether the agency was in fact run more efficiently after Mr. McIntosh's departure would not be an appropriate exercise of the judicial function. It is not the purpose of this court to administer the office of manpower affairs, or to substitute its judgment on questions of agency policy. *See* H. Kaplan, The Law of Civil Service 214, 249–50 (1958); 4 K. Davis, Administrative Law Treatise § 30.09 (1958); 18 N.H.B.J. 61, 74–76 (1976).

▮ Finally, plaintiff contends that the commissioner's stated intention that he and the deputy commissioner "absorb" Mr. McIntosh's workload converted the commissioner's action from a layoff into an abolition of the plaintiff's position, a step which a department head is not empowered to take in the absence of a specific legislative authorization. *Hunt v. Personnel Comm'n*, 115 N.H. 713, 349 A.2d 605 (1975). Inasmuch as we have found that the record herein supports Commissioner Barry's position that the layoff was made on the basis of an insufficiency of work to fully occupy three top level administrators without unneeded duplication of effort, the fact that certain of Mr. McIntosh's functions were necessarily redistributed does not signify that his position was abolished. *See Pearl v. Personnel Comm'n*, 117 N.H. 12, 370 A.2d 646 (1977).

*Petition denied.*

KENISON, C.J., concurred in the results; the others concurred.

KENISON, C.J., concurring in the result: There is considerable and persuasive evidence, both direct and circumstantial, to support plaintiff's contention that his layoff was not for reasons of efficiency and economy but as a direct result of his testimony before the Senate Select Committee. "Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry D. Thoreau, Journal, November 11, 1850. However, it is not the function of this court or any member of it to substitute its judgment on factual

matters for the findings of the personnel commission and this accounts for my reluctant concurrence in the result in this case.