Request of the House of Representatives
No. 78-205

## OPINION OF THE JUSTICES

September 20, 1978

The following resolution, House Resolution No. 10, was adopted by the house of representatives on August 23, 1978, and filed with the supreme court on the same date:

"Whereas, the Governor, gave as his reason for vetoing HB 69, "An Act establishing a termination schedule for use under the 'sunset' act, his reservations about the constitutionality of that bill; and

"Whereas, the House of Representatives therefore wishes the Court to resolve the question of the constitutionality of HB 69 before taking action on the Governor's veto message; now, therefore, be it

"Resolved by the House of Representatives:

"That the Supreme Court is respectfully requested to give their opinion upon the following questions:

"Does the New Hampshire Constitution, Pt. 1, Art. 37, or Pt. 2, Arts. 41 or 56, or any other provision of the State Constitution, preclude the inclusion in HB 69 of the state agencies in budget department 01, 03 (Executive Office) contained in that bill?

"Does the New Hampshire Constitution, Pt. 1, Art. 37, [sic] Pt. 2, Arts. 41 or 56, or any other provision of the State Constitution, preclude the inclusion in HB 69 of the state agencies created by Executive Order contained in that bill?

"Does the New Hampshire Constitution, Pt. 1, Art. 37, or Pt. 2, Arts. 41 or 56, or any other provision of the State Constitution, preclude the inclusion in HB 69 of any other state agencies contained in that bill?

"That the Clerk of the House be directed to forward ten copies of this resolution and of House Bill 69 to the Clerk of the Supreme Court."

The following answers are returned:

*To the Honorable House of Representatives:*

The undersigned, justices of the supreme court, return the following reply to the questions presented in your resolution adopted August 23, 1978, and filed in this court on the same date.

House Bill 69 would establish "a termination schedule of State agencies and programs" to be utilized in the implementation of RSA 17-G, the New Hampshire Sunset Act.

Under New Hampshire's Sunset Act, the legislature is required to review systematically certain State agencies and programs over a six-year cycle. A bill extending the life of each agency or program for an additional six years would be taken up during the regular legislative session in the year the agency or program is scheduled to terminate in accordance with a time-schedule set forth in RSA ch. 17-G. Following its evaluation and review, the legislature would determine whether the agency or program should be renewed.

In responding to your questions, we are initially guided by the doctrine and principle set forth in *Musgrove v. Parker*, 84 N.H. 550, 153 A.2d 320 (1931), and relied upon by Justices Johnston and Kenison in their opinion in the *Opinion of the Justices*, 96 N.H. 517, 524, 83 A.2d 738, 742 (1950).

> It has always been the practice in this jurisdiction to follow the universally accepted doctrine that the constitutionality of an act passed by the coordinate branch of the government is to be presumed. It will not be declared to be invalid except upon unescapable grounds; and the operation under it of another department of the state government will not be interfered with until the matter has received full and deliberate consideration. *Musgrove v. Parker, supra,* 84 N.H. at 551, 153 A.2d at 321.

This principle applies with no less vigor to actions of the other coordinate branches of government, the executive and the judiciary. In New Hampshire, its constitutional touchstone is part I, article 37, which provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the

whole fabric of the constitution in one indissoluble bond of union and amity.

We have stated that "the separation of powers between the legislative, executive and judicial branches of the government is an important part of its constitutional fabric." *Opinion of the Justices*, 102 N.H. 195, 196, 152 A.2d 878, 879 (1959). The principal purpose of this article is to protect each of the three branches from encroachment by the others. *Id.* As applied to the executive, its primary purpose is to protect it from legislative encroachment.

It is well established in our opinions that the three coordinate branches of government cannot be completely separate, and in the nature of things there must be some overlapping of power. In the link which binds the coordinate branches, a measure of overlapping of authority and function occurs and indeed is essential. There exists what has been described as "a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule." *Opinion of the Justices*, 87 N.H. 492, 493, 179 A.2d 344, 345 (1935). Just as it was recognized in the *Opinion of the Justices*, 85 N.H. 562, 567, 154 A.2d 217, 223 (1931), that "[c]ourts may have some administrative powers and executive agencies may have some judicial powers," it may also be said that the policy-making legislature possesses some administrative power and that the administrative Governor may possess some subordinate legislative power, all within circumscribed limits.

It is conceded by the Governor that agencies within the executive branch which have been created by general or special statute and which are contained in the operating budget are properly within the scope of the sunset process to the extent that neither the existence nor the funding of such agencies is deemed essential to fulfillment of the Governor's constitutional duties. We agree.

We need then concern ourselves with only five State agencies created by Executive order. Four of them are in the operating budget and all receive federal funds: The Council on Energy (Exec. Order No. 73-12 (1973)), the New Hampshire Office of Employment and Training (formerly the Office of Manpower Affairs) (Exec. Order No. 73-24 (1973)), the State Disaster Office (Exec. Order No. 4 (1969) and Exec. Order No. 73-2 (1973)), and the Governor's Commission on Crime and Delinquency (Exec. Order (1968)). The one not in the operating budget but also federally funded is the Coordinator of Drug Abuse (Exec. Order 73-5 (1973)).

With the foregoing in mind, we now consider the conflicting claims of the Governor and the house of representatives in this matter.

With regard to these five agencies, the Executive claims that their creation by Executive order, relying upon constitutional grounds, N.H. CONST. pt. II, art. 41, and their continued operation was and is a constitutional exercise of executive authority because they are internal units essential to the Governor in performing his duty faithfully to execute both State and federal laws.

The house of representatives asserts that four of these five agencies are in the operating budget and that all five Executive order agencies perform functions virtually indistinguishable from those performed by other State agencies which have been created by statute, and that none performs functions that are constitutionally entrusted to the Governor. Accordingly, it claims that regardless of how these five agencies were created and of the fact that they operate within the Executive branch, the legislature has the power to terminate these agencies under the Sunset Act.

Historically, courts have attempted to analyze the appropriateness of the exercise of constitutional power in terms of the nature of the function being performed—judicial, legislative, or executive. The accuracy and definitiveness of such an analysis necessarily depends upon the ease with which the particular governmental function may be identified. This analysis is more difficult when one governmental function overlaps with another.

We have held that an agency created by Governor's Executive order (Office of Manpower Affairs) which receives federal funds is a State agency within the terms of RSA 98:2(e), *Jeannont v. N.H. Personnel Comm'n*, 116 N.H. 376, 359 A.2d 638 (1976), and we have recognized the lawful existence of that same agency even though it was created by Executive order (Exec. Order No. 73-24 (1973)) of the Governor acting alone pursuant to New Hampshire Constitution part II, article 41. *See McIntosh v. Personnel Comm'n*, 117 N.H. 334, 374 A.2d 436 (1977). It is clear then that the five agencies in question are "state agencies" within the meaning of the "Sunset Act."

The question which remains, however, is whether on the sparse record before us these agencies are by the terms of the Sunset Act itself, *see* RSA 17-G:4, either constitutionally or statutorily exempt from its application. RSA 17-G:4 provides in relevant part:

> Exemptions. The provisions of this chapter shall not apply to the following state agencies and programs:

I. Offices or agencies required by provisions of the New Hampshire Constitution. . . .

By this exemption, the legislature rightly recognized the limits of its constitutional authority.

 One of the offices or agencies required by the constitution is the office of Governor. N.H. CONST. pt. II, art. 41. "The executive power of the State is vested in the governor." *Id.* We have recognized the authority of the Governor to issue Executive orders creating agencies for the purpose of receiving federal funds and implementing federal grants-in-aid programs. *Jeannont v. N.H. Personnel Comm'n,* 116 N.H. 376, 359 A.2d 638 (1976) and *McIntosh v. Personnel Comm'n,* 117 N.H. 334, 374 A.2d 436 (1977). *See also* Note, *Gubernatorial Executive Orders as Devices for Administrative Direction and Control,* 50 Iowa L. Rev. 78 (1964). Of course, should the exercise of that power exceed the Governor's constitutional authority or conflict with appropriate legislative mandates, such acts would be void. *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974).

The answers to the questions now before the undersigned involve "interpretation of our State constitution and of statutes relative to the executive and legislative branches of our government." This is a "traditional function" required of us under New Hampshire Constitution part II, article 74. *O'Neil v. Thomson,* 114 N.H. at 159, 316 A.2d at 170.

A review of the Executive orders before us reveals that the Governor purports to exercise his executive power to administer, coordinate, plan, direct, and provide an effective mechanism for fulfillment of his constitutional functions and duties. "The executive department is the active agency to carry laws into effect and enforce them." *Opinion of the Justices,* 110 N.H. 359, 365, 266 A.2d 823 (1970) (Grimes, J.), quoting from *Opinion of the Justices,* 85 N.H. 562, 567, 154 A.2d 217, 223 (1931).

We have previously advised that:

The statements in the Constitution that the legislature has "the supreme legislative power" (pt. II, art. 2), that the "executive power" is in the Governor (pt. II, art. 41) and the "judicial power" shall vest in the courts do not provide easy-to-find compartments for all governmental operations. The three branches of government "cannot be completely separated" and "[i]n the nature of things there must be some overlapping."

*Opinion of the Justices*, 85 N.H. 562, 567, 154 A. 217, 223 (1931); *Opinion of the Justices*, 102 N.H. 195, 196, 152 A.2d 878, 879 (1959). Indeed part II of the constitution sets forth a significant, albeit limited blending of those powers. Articles 5, 17, 33, 38, 40, 43, 44, 45, 49, 50, 52, 63, 67, 93, 94, 95; 5 N.H.B.J. 208, 209 (1963). Thus, part I, article 37 "has continued to receive a practical construction," *Opinion of the Justices*, 102 N.H. 195, 197, 152 A.2d 878, 880, and has been acknowledged to contemplate " 'some overlapping and duality as a matter of practical and essential expediency.' " *Opinion of the Justices*, 110 N.H. 359, 363, 266 A.2d 823, 825–26 (1970).

Questions relating to the allocation of constitutional powers cannot always be resolved exclusively by an analysis of separate governmental functions, nor by reference to a definitive constitutional text. At the federal level, Justice Jackson articulated a proposal for determining the jurisdiction of the respective branches of government in the *Steel Seizure Case, Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 634 (1952) (Jackson, J. concurring).

> [H]is analysis posited a theory of fluctuating presidential and congressional power over national policy-making. According to the theory, both branches possess a zone of constitutionally exclusive powers in which each may act even against the express contrary will of the coordinate branch. In between these two exclusive areas, however, a "zone of twilight" prevails in which the power distribution is uncertain. In this twilight zone, either branch can act absent the initiative of the other. Accordingly, with respect to the operative presumptions, greater deference would be accorded a Presidential action taken pursuant to an express or implied authorization of Congress than an action incompatible with the express will . . . of Congress. Frohnmayer, *The Separation of Powers*, 52 Oregon L. Rev. 211, 219 (1973).

As this court said in *O'Neil v. Thomson*, 114 N.H. at 164, 316 A.2d at 173, the Executive orders in that case contravened "the legislative intent expressed . . . for the hiring of new personnel and the purchase of automobiles." Similarly, in the *Opinion of the Justices*, 118 N.H. 7, 381 A.2d 1204 (1978), section 62 of chapter 600 of the Laws of 1977, returning the health planning and development agency to the previously legislatively created department of health and welfare, Laws of 1961, chapter 222, was held to supersede an Executive order with which it conflicted. In the case at hand there does not

exist the kind of legislative activity that required us to void the Executive orders at issue in *O'Neil v. Thomson supra* and *Opinion of the Justices*, 118 N.H. 7, 381 A.2d 1204 (1978).

██ We must presume the Governor was within the exercise of his constitutional powers in issuing and operating under these Executive orders, and on the record before us, we cannot conclude inescapably that the Governor has exceeded his constitutional authority so as to place these agencies outside the exemption of RSA 17-G:4. *See Musgrove v. Parker*, 84 N.H. 550, 153 A.2d 320 (1931).

Accordingly, we advise that should House bill 69 become law, the five agencies created by Executive order would not, at this time be subject to the termination schedule set forth in the bill.

██ This is not to say that the legislature is without effective controls on the executive. As was advised by Justices Kenison and Johnston in *Opinion of the Justices*, 96 N.H. 517, 529, 83 A.2d 738, 746 (1950), "the Legislature has a practical check upon the . . . executive in the matter of the appropriations for running the state departments that are made on a year to year basis. In appropriating or not appropriating money for a department or its subdivisions or for the carrying out of particular services, the Legislature has a fundamental control" which must always be subject to a recognition of what funds and agencies are reasonably necessary for the exercise of powers inherent to the proper functioning of the three branches of government if they are to fulfill their constitutional duties.

Subject to the standards and limitations set forth in this opinion, we answer your questions as follows:

The answer to question No. 1 is "No,"
The answer to question No. 2 is "Yes,"
The answer to question No. 3 is "No."

> EDWARD J. LAMPRON
> WILLIAM A. GRIMES
> MAURICE P. BOIS
> CHARLES G. DOUGLAS, III
> DAVID A. BROCK

August 31, 1978

T. William Bigelow filed memorandum in behalf of His Excellency, Governor Meldrim Thomson; George B. Roberts, Jr., Speaker of the House of Representatives filed memorandum; Senator Robert B. Monier, District 9, filed memorandum.