Request of Senate
No. 7778

OPINION OF THE JUSTICES

May 24, 1977

The following resolution was adopted by the senate on February 10, 1977, and filed with the supreme court on April 22, 1977:

"WHEREAS, Senate Bill 42, An Act establishing a judicial selection commission to recommend at least 3 candidates for all judicial appointments is pending before the New Hampshire Senate; and

"WHEREAS, said bill provides for the establishment of a commission consisting of the chief justice of the Supreme Court, 5 members of the New Hampshire Bar Association appointed by its Board of Governors and 5 members of the general public who are not members of the Bar appointed by the Governor and Council; and

"WHEREAS, said bill further provides that the Governor shall inform the chairman of the commission when a vacancy occurs in a judicial position and that the commission shall screen all candidates for a judicial office and select at least 3 candidates for consideration by the Governor and Council; and

"WHEREAS, said bill further provides that the Governor and Council may nominate and appoint one of the commission's selections to the judicial position or may nominate and appoint some other person to said position pursuant to Part II, Article 46 of the Constitution of New Hampshire, but if one of the commission's selections are [sic] accepted, the appointment shall be made within 60 days; and

"WHEREAS, an amendment to said Senate Bill 42 has been proposed which would remove the requirement that the Governor inform the chairman of the commission when a vacancy occurs and the requirement that the appointment of one of the commission's selections, if accepted, be made within 60 days; and

"WHEREAS, the Constitution of New Hampshire, Part II, Article 46 provides that all judicial officers shall be nominated and appointed by the Governor and Council; and

"WHEREAS, the constitutionality of Senate Bill 42 has been questioned, now therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of the law:

"1. Do the provisions of Senate Bill 42 conflict with the provisions of Part II, Article 46 of the Constitution of New Hampshire?

"2. Would the provisions of said bill, as amended by the proposed amendments, conflict with the provisions of Part II, Article 46 of the Constitution of New Hampshire?

"3. Do the provisions of said bill, as presently drafted or with the proposed amendments, conflict with any other provisions of the Constitution of New Hampshire?

"BE IT FURTHER RESOLVED, that the President of the Senate transmit 7 copies each of this resolution, Senate Bill 42, and the proposed amendment to Senate Bill 42 to the Clerk of the Supreme Court for consideration by said court."

The following answers were returned:

*To The Honorable Senate:*

The undersigned, justices of the supreme court, return the following reply to the questions presented in your resolution adopted February 10, 1977, but not filed in this court until April 22, 1977.

Senate bill 42 would establish an eleven-member judicial selection committee consisting of five appointees from the New Hampshire Bar Association, one person from each of the five councilor districts appointed by Governor and Council, and the chief justice of the state supreme court.

Whenever a vacancy occurs in a judicial position, the Governor is required to inform the commission, which then convenes, accepts suggestions for candidates, carefully screens all candidates and, within thirty days after the vacancy occurs, selects at least three candidates for consideration by the Governor and Council. The names of candidates (but nothing else) are to be kept in strict confidentiality by the commission, but presumably the Governor or any Councilor could disclose the names, and the findings and recommendations without names could apparently be disclosed by anyone.

The Governor is free at any time to nominate whomever he chooses but would be required to do so within sixty days of the submission if the nominee is one of the persons recommended by the commission.

An amendment to this bill would remove the two requirements to be imposed on the Governor, namely, notice of a vacancy and appointment of a recommended person within sixty days. The proposed amendment also would direct the chairman to convene the commission not only when a vacancy occurs but also when a vacancy may be anticipated or at any other time.

The issue before this court is whether Senate bill 42 as it is or may be amended conflicts with the Constitution of the State of New Hampshire and particularly part II, article 46 and part I, article 37.

■■ We hold that the judicial selection commission proposed to be established by the legislature is an unconstitutional encroachment upon the powers of the Governor and the Council.

Our state constitution provides that state government shall consist of three separate branches:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity. N.H. CONST. pt. I, art. 37.

■ When it comes to judges, the power of nomination is granted exclusively to the Governor, and the power of appointment is granted exclusively to the Council:

> All judicial officers . . . shall be nominated and appointed by the governor and council . . . N.H. CONST. pt. II, art. 46.

Two years ago this court had before it a bill relating to appointments to the statutorily created post of health and welfare commissioner. In upholding the legislature's power under pt. II, art. 5 to "fix laws" for the naming of nonconstitutional officers this court distinguished such a post by saying:

■ "The constitution provides for certain constitutional State officers and directs the manner in which they are to be appointed. . . . The method of selection of constitutional officers is

provided by the constitution and *may not be altered by the legislature." Opinion of the Justices*, 115 N.H. 159, 161, 335 A.2d 642, 643 (1975) (emphasis added).

This decision merely reaffirmed this court's earlier decision in *Brouillard v. Governor and Council*, 114 N.H. 541, 547, 323 A.2d 901, 905 (1974), that said judicial officers "must be appointed by the Governor and Council and *no change* can be made in that method of selection" (emphasis added).

In striking down an executive branch attempt to regulate conflicts of interests among executive branch appointees this court last year said that "(T)he separation of powers requirement of the constitution (N.H. Const. pt. I, art. 37) is violated by an encroachment by one branch of government upon a constitutional function of another . . . However desirable comprehensive legislation . . . may be, [such] is the prerogative and responsibility of the legislature and not of the executive." *Opinion of the Justices*, 116 N.H. 406, 413, 360 A.2d 116, 122 (1976). Should the Governor, as he has done, wish to set up a screening or selection mechanism on his own he is naturally free to do so.

By executive order the Governor of Massachusetts established a Judicial Nominating Commission in 1975. In upholding his purely voluntary action the Supreme Judicial Court of Massachusetts held "the Governor has the constitutional right to establish" such a commission because, like the legislature, "the Governor has broad discretion to select the means he will use in executing a constitutional duty." *Opinion of the Justices*, 334 N.E.2d 604, 609 (Mass. 1975). That court did not indicate such a board could have been imposed on the Governor by the legislature.

In the 1974 Constitutional Convention, Resolution 102 was offered along lines similar to the bill before us. It was not adopted by the convention and doubt has been expressed that a statute, rather than a constitutional amendment, would be constitutional. *See Report of Governor's Commission on Court System Improvement*, 16 N.H.B.J. 1, 69 (1974). Those states with such agencies have done so by constitutional amendment. *See, e.g.*, CAL. CONST. art. VI, § 16; MO. CONST. art. 5; ALAS. CONST. art. IV, §§ 5-9; IOWA CONST. art. V., §§ 15-18.

Regardless of the merits of the bill, it nevertheless encroaches on a constitutional power of the Governor by "altering" or "changing" the selection process for judges.

The first two questions are answered in the affirmative and, because of pt. I, art. 37, so is the third.

WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS, III

*To The Honorable Senate:*

The undersigned justices of the supreme court return the following reply to the questions presented in your resolution adopted February 10, 1977, and filed in this court on April 22, 1977.

Senate bill 42, in both its original and amended form, proposes the creation of a judicial selection commission which would accept from various sources, including the Governor, the names of candidates recommended to fill vacant judicial offices. The commission would screen all candidates and recommend at least three individuals for each vacancy. The findings concerning each candidate would be submitted to the Governor and Council. All commission proceedings and recommendations would be kept strictly confidential. The Governor and Council would thereafter nominate and appoint to each vacant position either someone whom the commission recommended or anyone else, whether or not such person was considered by the commission.

The bill in its original form contains three additional requirements that are deleted under the proposed amendment. First, the Governor shall inform the commission when a vacancy occurs, and the chairman shall then convene the commission. Second, the commission shall make its recommendation within thirty days after a vacancy has occurred. Third, if the Governor and Council accept one of the commission's recommended candidates, the appointment shall be made within sixty days of the receipt of the recommendations.

Questions No. 1 and 2 ask respectively whether the bill in its original and amended forms would violate part II, article 46 of the New Hampshire Constitution. This provision states that all judicial officers "shall be nominated and appointed by the Governor and

Council; and every such nomination shall be made at least three days prior to such appointment; and no appointment shall take place, unless a majority of the council agree thereto."

In support of its conclusion that the bill is unconstitutional, the majority refers to several states that have amended their constitutions in order to effectuate changes in their judicial selection processes. For a more comprehensive list of such states, see Note, *Judicial Selection in the States: A Critical Study with Proposals for Reform,* 4 Hofstra L. Rev. 267, Table I at 284 (1976). What happened in these states is not relevant for two reasons. First, these states have adopted the so-called merit selection plan, *see id.* at 280–84; Note, *Judicial Selection and Tenure—The Merit Plan in Ohio,* 42 U. Cinn. L. Rev. 255, 262–63 (1973), which differs from the proposals before us in several significant respects. Although both the merit selection plan and the two versions of Senate bill 42 provide for a judicial selection commission which recommends candidates to the Governor, under the merit selection plan the Governor must appoint a candidate from the commission's list. Runkle, *The Judicial Nominating Commission,* 54 Jud. 114 (1970); Note, *Analysis of Methods of Judicial Selection and Tenure,* 6 U. Suffolk L. Rev. 955, 963 (1972). Furthermore, under the plan adopted in many states, if the Governor fails to appoint within a certain number of days, the Chief Justice of the Supreme Court becomes vested with the appointment authority. G. Winters, Selected Readings: Judicial Selection and Tenure 182, 188–89 (1967). In contrast to the merit selection plan, both proposals before us allow the Governor and Council to disregard entirely the commission's recommendations and nominate and appoint anyone they desire. Additionally, neither version provides for any transfer of authority from the Governor and Council to any other state official or group under any circumstances.

Second, the states that have amended their constitutions to implement the merit selection plan had previously chosen judges through constitutionally mandated popular elections—Note, *supra,* 4 Hofstra L. Rev. at 280–84—a selection method that is not only very different from our own but also fundamentally at odds with the merit selection system. Adoption of the merit selection plan in these "election states" could be achieved, of course, only through

a constitutional amendment. *See id.* at 316; Note, *Judicial Selection in North Dakota—Is Constitutional Revision Necessary*? 48 N.D.L. Rev. 326, 328–29 (1971–72).

If any state's situation with respect to judicial selection reform is similar to our own it is that of Massachusetts. The Constitution of Massachusetts, like the New Hampshire Constitution, provides that "[a]ll judicial officers . . . shall be nominated and appointed by the governor. . . ." MASS. CONST. pt. II, ch. 2, § 1, art. 9. Recently, the Supreme Judicial Court of Massachusetts held that the creation of a judicial nomination commission to advise the Governor on judicial appointments did not violate the constitutional provision quoted above. *Opinion of the Justices to the Council,* 334 N.E.2d 604 (Mass. 1975).

Contrary to the impression that may have been created by the majority opinion, the Massachusetts court did not sustain the plan on the ground it was voluntarily undertaken by the Governor, as opposed to being undertaken by the legislature. The court did not even mention, let alone rely upon, the fact the commission was created by executive order rather than by statute. The court's statement, quoted by the majority, concerning the Governor's "broad discretion" was made in response to a question whether the Governor had the power to create such a commission. It was only after answering that question in the affirmative that the court went on to discuss the issue relevant to our inquiry today. The court stated that the Governor could delegate to others the power to investigate the qualifications of judicial candidates "as long as he does not surrender to them his responsibility to select a candidate and to make the nomination and appointment." *Opinion of the Justices to the Council,* 334 N.E.2d at 609. The court reasoned that, because the commission's recommendations were not binding on the Governor, his right and duty to select any qualified person he wishes were not "delegated, surrendered, abandoned or unduly restricted." *Id.* at 610. Thus, it was the nonbinding aspect of the commission's recommendations—not the fact that the Governor voluntarily instituted the program—that saved the constitutionality of the scheme.

Turning now to our own cases, in *Opinion of the Justices,* 115 N.H. 159, 335 A.2d 642 (1975), we sustained the constitutionality

of a legislative proposal that (1) required the Governor and Council to appoint a health and welfare commissioner from a list of nominees submitted by an advisory commission, (2) fixed a time limit for such appointment, and (3) transferred the power of appointment to the advisory commission upon expiration of that deadline. In the context of that proposal, which bears no resemblance to the present ones, we stated parenthetically that "[t]he method of selection of constitutional officers is provided by the constitution and may not be altered by the legislature." *Id.* at 161, 335 A.2d at 643; *see Brouillard v. Governor and Council,* 114 N.H. 541, 547, 323 A.2d 901, 905 (1974). We affirm this principle today and inquire only whether Senate bill 42 in either form alters the method of judicial selection in a manner inconsistent with the constitution. *We* conclude it does not.

The essence of the power to nominate and appoint is the unfettered power to choose any person for judicial office that the Governor and Council wish. Under both versions of Senate bill 42, this authority remains intact: The fact that the Governor and Council would be free to disregard the commission's recommendations and appoint someone who was rejected or not even considered by the commission means that they will continue to exercise complete control over the nomination and appointment process. The proposed commission would have no veto power over the final selection. If Senate bill 42 attempted to give the legislature veto power over the Governor's choice, a constitutional amendment would be necessary. ME. CONST. art. 5, pt. 1, § 8. Or if the bill proposed a transfer of appointment power to another officer, or department of government, the measure would be unconstitutional. *Curtis v. Cornish,* 109 Me. 384, 84 A. 799 (1912). Also, if the bill called for binding recommendations, we would not sustain its constitutionality. But the proposed legislation would cause no such fundamental changes.

The amended bill does nothing more than create a citizens' committee to do what any citizen may do—namely, recommend to the Governor and Council persons deemed to be qualified for judicial office. The only purpose of creating such a system is to aid the Governor and the Council in fulfilling their constitutional duties. At present, the New Hampshire Bar Association screens candidates

for appointments to state judicial positions. 3 N.H.L. Weekly, 103 & 279 (1976–77). The creation of a judicial selection commission would simply formalize the advisory efforts presently and previously undertaken by the bar association.

The majority more than casually mentions that the bill may not guarantee complete confidentiality. One of the memos we received suggests that the bill's confidentiality provision might conflict with RSA ch. 91-A (Supp. 1975). Whether the bill provides too much or too little confidentiality is, of course, irrelevant to the constitutionality of the scheme.

The majority's reference to the *Report of Governor's Commission on Court System Improvement,* 16 N.H.B.J. 1 (1974), is both inaccurate and misleading. Even a casual reading of the *Report* reveals that the "doubts" expressed were with respect to the constitutionality of an adoption by statute of the merit selection plan as discussed in paragraph 5 of this opinion. In reference to that plan the *Report* states: "The imposition by statute of any limitation upon [the Governor and Council's right to nominate and appoint], such as by requiring that the appointment be made from two or more nominees by a statutory panel or committee, would have dubious validity." *Id.* at 69.

More importantly, the *Report* goes on to recommend the "statutory enactment of a merit selection plan which would contain all the elements of the statutory selection plans used elsewhere except the requirement that the Governor *must* appoint from the list of nominees recommended by the selection panel or committee." *Id.* (Emphasis in original.) It is obvious that the Governor's Commission regarded the statutory creation of a judicial selection commission as constitutional as long as the commission's recommendations did not bind the Governor and Council. Thus, the *Report's* conclusions, based upon careful and thorough research and study, are directly at odds with the majority opinion.

We are unable to find in the amended bill any substantive restriction or encroachment upon the power of the Governor and Council, and the majority has articulated none. The inescapable conclusion is that the bill in its amended form is constitutional. The answer to Question No. 2 is "No."

The additional requirements contained in the original version of Senate bill 42 do not violate part 2, article 46 and so the answer to Question No. 1 is also "No." The Governor's task of informing the commission that a vacancy exists does not diminish or interfere with his power to nominate and appoint the candidate of his choice. The requirement is merely a means of triggering the operation of the commission. That the commission must convene and make its recommendations within thirty days, is, of course, a command addressed to the commission and does not involve the Governor in any way. The bill contains no implicit requirement that the Governor postpone his decision for thirty days to give the commission an opportunity to make its decisions. Finally, the sixty-day period (within which the appointment must be made if the Governor and Council choose one of the commission's recommended candidates) is valid, subject only to the constitutional mandate that three days lapse between nomination and appointment. N.H. CONST. pt. II, art. 46.

With respect to the separation of powers issue the majority relies upon our statement in *Opinion of the Justices,* 116 N.H. 406, 413, 360 A.2d 116, 122 (1976), to the effect that the constitution is violated when one branch of government encroaches upon a constitutional function of another. Without identifying any impermissible encroachment, the majority declares the proposed legislation to be contrary to the separation of powers provision. N.H. CONST. pt. I, art. 37. It is difficult for us to comprehend how the nonbinding suggestions of an eleven-member commission, none of whom are legislators or appointed by legislators, five of whom are appointed by the Governor and only one of whom comes from the judiciary can possibly amount to an unconstitutional encroachment upon the authority of the Governor and Council. The answer to Question No. 3 is "No."

FRANK R. KENISON
EDWARD J. LAMPRON


T. William Bigelow, legal counsel, filed memorandum in behalf of Governor Meldrim Thomson, Jr.

Charles H. Toll, Jr., and William B. Roberts filed memorandum.