LAMPRON, J., did not sit.

Request of Governor and Council
No. 7958

### OPINION OF THE JUSTICES

January 16, 1978

The following resolution was adopted by the Governor and Council on November 30, 1977, and filed with the supreme court on December 1, 1977:

"WHEREAS, the Congress of the United States on January 4, 1975 enacted Part C of Subchapter XIII of the Public Health Service Act, 42 U.S.C. § 300m *et seq.*, entitled State Health Planning and Development and provided therein at 42 U.S.C. § 300 m-4, for the grant of federal funds to State health planning and development agencies which have been designated in accordance with the act;

"WHEREAS, the Act provides at 42 U.S.C. § 300m(a) that the 'secretary shall enter into and renew agreements (described in subsection (b) of this section) for the designation of a State health planning and development agency . . .' and at subsection b(1) provides that a 'designation agreement under subsection (a) . . . is an agreement with the Governor of a State for the designation of an agency (selected by the Governor) of the government of that State as the State health planning and development agency . . . to administer the State administrative program . . . and carry out the State's health planning and development functions . . . ;'

"WHEREAS, by Laws 1977, Chapter 600 of the New Hampshire Legislature enacted the Budget Act for fiscal years 1978–79, footnote 62 of which reads as follows:

'Office of Health Planning and Development. Amend RSA 126-A by inserting after Section 57 the following new subdivision:

'126-A:58 Office Established; Office of Health Planning. There is hereby established an Office of Health Planning and Development under the Commissioner. Said Office shall consist of a Director and such technical staff as are required to carry out the functions of Public Law 93–641 and amendment thereto.

'126-A:59 Office to Implement and Coordinate the National Health Planning and Resources Development Act of 1974 (Public Law 93–641). The Governor shall desig-

nate the Department of Health and Welfare to administer the provisions of Titles XV and XVI of the United States Public Health Service Act, as amended, and as it relates to the Office of Health Planning and Development. The Director is hereby authorized to receive and expend federal funds under said Act in accordance with State administrative procedures.

'126-A:60 Director. There shall be a Director of the office who shall be a classified State employee. The Director shall have professional training in a health management discipline, with a minimum of 5 years experience in health care administration at patient care level or any equivalent combination of 7 years professional education and experience in health care management;'

"WHEREAS, the State agency presently performing the functions prescribed in 42 U.S.C. § 300 k–n, pursuant to an agreement between the Governor and the Secretary is the Office of Health Planning and Development;

"WHEREAS, the Governor does not desire to select the Department of Health and Welfare as the agency to include and supervise the Office of Health Planning and Development, which would have the effect of selecting the Department of Health and Welfare to carry out the State's health planning and development functions under 42 U.S.C. § 300 m(a);

"WHEREAS, it is a matter of great importance to provide legal authority, for the expenditure of funds necessary to carry on the functions of the designated agency, under which the Governor and Council may approve warrants pursuant to Article 56, Part II of the New Hampshire Constitution; and

"WHEREAS, the action of the Legislature in directing the Governor to select the Department of Health and Welfare as the designated agency presents a solemn occasion on which important questions of law arise in that such action may be an unconstitutional exercise of legislative power under Article 37, Part I of the New Hampshire Constitution and Article VI of the United States Constitution;

"NOW, THEREFORE, BE IT RESOLVED, that the Justices of the Supreme Court of New Hampshire be respectfully requested to give their opinions under Article 74, Part II of the New Hampshire Constitution on the following questions of law:

"(1) Does the New Hampshire Constitution, Part I, Article 37, preclude the Legislature from requiring the Governor to make a particular designation of an agency to include the Office of Health Planning and Development pursuant to 42 U.S.C. § 300m (b) (1)?

"(2) If the answer to question 1 is in the negative, does the Supremacy Clause of the Constitution of the United States, Article VI, or 42 U.S.C. § 300m (b) (1), read with the Supremacy Clause, preclude the Legislature from requiring the Governor to make a particular designation of an agency to include the Office of Health Planning and Development pursuant to 42 U.S.C. § 300m (b) (1)?

"(3) If the answer to either question 1 or question 2 is in the affirmative, has the Legislature, by attempting to require the Governor in the manner described above precluded acceptance of the federal funds to underwrite the operation of the Office of Health Planning and Development except upon the Governor's designation of the Department of Health and Welfare to include that Office?

"AND BE IT FURTHER RESOLVED that the Secretary of State be, and hereby is directed to deliver ten copies of this Resolution to the Clerk of the Supreme Court of New Hampshire."

The following answers were returned:

*To His Excellency the Governor and the Honorable Council:*

The undersigned, justices of the supreme court, return the following reply to the questions presented in your resolution adopted November 30, 1977, and filed in this court on December 1, 1977.

Pursuant to article 74, part II of the New Hampshire Constitution you inquire:

(1) Does the New Hampshire Constitution, Part I, Article 37, preclude the Legislature from requiring the Governor to make a particular designation of an agency to include the Office of Health Planning and Development pursuant to 42 U.S.C. § 300m (b) (1)?

(2) If the answer to question 1 is in the negative, does the Supremacy Clause of the Constitution of the United States, Article VI, or 42 U.S.C. § 300m (b) (1), read with the Supremacy Clause, preclude the Legislature from requiring the Governor to make a particular designation of an agency to include the Office of Health Planning and Development pursuant to 42 U.S.C. § 300m (b) (1)?

(3) If the answer to either question 1 or question 2 is in the affirmative, has the Legislature, by attempting

to require the Governor in the manner described above precluded acceptance of the federal funds to underwrite the operation of the Office of Health Planning and Development except upon the Governor's designation of the Department of Health and Welfare to include that Office?

The dispute is over the question whether the legislature has the authority to direct the manner in which federal funds available to the State for health planning and development are to be expended in this State for those purposes, and whether section 62 of the recently enacted appropriations act, ch. 600, 1977 N.H. Laws [hereinafter Budget Act], is in conflict with the supremacy clause of the Constitution of the United States. Your inquiry relates to your duty to approve warrants for the expenditures of funds pursuant to article 56, part II of the New Hampshire Constitution.

## I

*Background.* The National Health Planning and Resources Development Act of 1974, Pub. L. No. 93–641, 88 Stat. 2225 (codified at 42 U.S.C.A. § 300k *et seq.* (Supp. 1977)), took effect on January 4, 1975. That Act restructured the delivery of health services in the States by consolidating a multitude of preexisting federal programs dealing with planning, resource allocation and regulation in the health care field into a unified system. Section 1521 of the Act, 42 U.S.C.A. § 300m (Supp. 1977), requires each participating State to establish a State health planning and development agency as one of the principal vehicles by which health planning and regulation is executed. The creation of this agency in conformity with the Federal Act is a precondition for the continued eligibility of State and local agencies and health care facilities within the State for a variety of federal assistance programs including medicare and medicaid reimbursements. 42 U.S.C.A. § 300m(d) (Supp. 1977).

The memorandum of the speaker of the house relates the following executive branch action:

In July 1976, New Hampshire Executive Order 76-12 designated the Office of the Governor as the State Health Planning and Development Agency and created within that office the office of health planning and development "to discharge the responsibilities assigned to the Executive Department under this Order." In August 1976, the Governor submitted to the Secretary of Health, Education and Welfare the State's "Application for Conditional Desig-

nation of its State Health Planning and Development Agency." In October 1976, the Governor entered into a conditional Designation Agreement with the Secretary of Health, Education and Welfare under which the Office of Health Planning and Development was authorized to discharge the functions of the State agency under section 1523 of the Federal Act, 42 U.S.C.A. § 300m-2 (Supp. 1977).

In April 1977, Executive Order 76-12 was rescinded by Executive Order 77-2 which designated the office of the commissioner of the department of health and welfare as the State Health Planning and Development Agency and which created within that office the office of health planning and development "to discharge the responsibilities assigned to the Executive Department under this Order."

Shortly thereafter, in August 1977, Executive Order 77-2 was amended to remove the authority for health planning and development from the department of health and welfare and to recreate the State Health Planning and Development Agency "as a separate and independent agency," attaching it to the Governor's Office "for fiscal, administrative and technical support" and specifying that "the Governor shall exercise direct responsibility for independent supervision" over the agency.

In October 1977, section 62 of the Budget Act returned the responsibility for comprehensive health planning and regulation to the department of health and welfare by establishing within the office of the commissioner of health and welfare an office of health planning and development and directing the Governor to designate the department of health and welfare as the responsible State agency for the purposes of the Federal Act. The budget had been amended on the floor of the senate on June 9, 1977, to appropriate general fund revenues and certain federal monies then available to the State for health planning as line items under the department of health and welfare and to create the position of director of the State Health Planning and Development Agency to "be appointed by the governor and council upon the recommendation of the commissioner of health and welfare." N.H.S. Jour. 962 (1977). During the deliberations of the third committee of conference on the operating budget, these provisions were altered to incorporate in substantial form certain of the provisions of unenacted House bill 602 relating to the location of the office of health planning and development, the qualifications and duties of its director, and amending the appropriation of both federal and general funds.

The 1977–78 operating budget was enacted by the legislature on October 20, 1977, and took effect, without the Governor's signature, on October 26, 1977. The incompatibility of section 62 of the budget with Executive Order 77-2, as amended, cast doubt on the legal status of the State's Health Planning and Development Agency and led to the request of the Governor and Council for the opinion of this court.

We note that the growth of federal block grants, revenue sharing, and other payments to the States out of the federal treasury has been rapid and dramatic. As the Governor remarked in his first budget message:

It is difficult to assess the full extent of our growing addiction for federal money. Unfortunately, millions of federal dollars never pass through your legislative process.

N.H.H.R. Jour. 296 (1973) (budget address of Hon. Meldrim Thomson, Jr.). The current biennial budget exceeds one billion dollars, of which over $290,000,000, or about twenty-eight percent, is federal funding. Of the over $11,000,000 per year appropriated to the executive office agencies and staff under the Governor, approximately ninety percent comes from federal funds.

Our basic laws relating to federal aid were placed on the books in 1933 as a direct result of New Deal legislation in Washington that sought to "pump prime" the economy by injecting federal money into the State coffers. The present RSA ch. 124, *as amended,* (Supp. 1975), was enacted to allow the Governor and Council to apply for and designate agencies to spend federal money. Such funds are to be "disbursed by the treasurer upon warrants drawn by the governor for the purposes for which such relief or aid is granted." RSA 124:1. In 1967, certain reports for nonappropriated federal funds were required of executive agencies, RSA 124:7 (Supp. 1975), and in 1971 the duties of the coordinator of federal funds regarding executive agencies were broadened, *see* RSA 4:12-a (Supp. 1975). Section 62 of the Budget Act designating which agency will spend federal health planning funds is the focus of the current inquiries.

## II

*Separation of Powers.* Ever since *Merrill v. Sherburne,* 1 N.H. 199 (1818), this court has had the duty to exercise its inherent power of judicial review to determine whether a law or executive action is repugnant to the constitution. In that case a legislative

act was struck down as encroaching upon the constitutional prerogatives of another branch of government under N.H. Const. pt. I, art. 37, which requires that the three great governmental powers be as independent of each other as "the nature of a free government will admit." *See also Opinion of the Justices,* 117 N.H. 398, 374 A.2d 638 (1977) (legislative proposal to alter method of judicial appointment found to be unconstitutional infringement on executive power). Under our republican form of government the legislature exercises one of the three "essential powers" of our government, N.H. Const. pt. I, art. 37, for it possesses "supreme legislative power" within this State, N.H. Const. pt. II, art. 2. "It has the power to make laws; to name all civil officers [with certain exceptions] and to define their duties and powers . . . ." *O'Neil v. Thomson,* 114 N.H. 155, 160, 316 A.2d 168, 171 (1974).

■ However, neither *Merrill* nor the *Opinion of the Justices* prevents the General Court from assigning the oversight function in the Federal Act because the health planning agency is not of constitutional dimension. For nonconstitutional agencies or officials "the Constitution is clear that the Legislature has the power 'to name and settle biennially, or provide by fixed laws for the naming and settling, all civil officers within this state.' N.H. Const., Pt. II, Art. 5th." *Brouillard v. Governor and Council,* 114 N.H. 541, 547, 323 A.2d 901, 905 (1974).

■■ The Governor is, of course, the head of the executive branch. Since 1966, N.H. Const. pt. II, art. 41 has provided that "[t]he executive power of the state is vested in the governor. The governor shall be responsible for the faithful execution of the laws." Although he may enter into contracts on behalf of the State, *Opinion of the Justices,* 74 N.H. 606, 607, 68 A. 873, 874 (1907), the executive power may not be used to frustrate valid legislative enactments. *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974). In fact, one aspect of the history of the amendment to article 41 was to "enforce respect for legislative mandates, powers, rights and duties" and to stem the progressive decline of legislative power. N.H. Jour. of Const. Conv. 288–89 (1964).

The separation of powers tension between the legislature and the executive for control of federal funds and the designation of State agencies for accepting and expending those funds has recently surfaced in the Commonwealth of Pennsylvania. The Governor went to court to challenge statutes controlling receipt and

disbursement of federal funds. In a lengthy and well-reasoned opinion, the Commonwealth Court of Pennsylvania found similar legislative policy concerns regarding the massive infusion of federal funds into that State's agencies:

> [I]t is a fact of life that by the carrot and stick technique the Federal government, through a plethora of programs, is offering an ever increasing amount of Federal aid funds to States subject to Federally imposed regulations. Today in Pennsylvania, Federal aid funds constitute a substantial and ever increasing amount of public money devoted to programs which, in the final analysis, are of a nature that for State purposes clearly fall within the legislative power to adopt or refrain from adopting. Legislative action or nonaction as to any particular programs is, in turn, subject to the scrutiny of and political action by the citizens of this Commonwealth.

*Shapp v. Sloan,* 27 Pa. Commw. Ct. 312, 367 A.2d 791, 797 (1976).

Unless proper regard is given to the respective roles of the policy-making legislature and the administrative Governor, "the legislative branch of our State government would have little or no role to play with respect to Federal aid programs with the corollary result that the executive branch in the name of supreme executive power would not be faithfully executing the laws of this Commonwealth but rather, as it saw fit, seeking and administering Federal aid programs free of any checks or balances and with little political accountability for such actions." *Id.,* 367 A.2d at 797.

The legislature may take a variety of approaches to the structuring and spending of federal funds. The Budget Act provides many examples. Section 28 relates to revenue sharing funds received by the State government. Section 37 specifically authorizes the department of employment security "through its commissioner" to serve as an "agent of the United States" to provide certain benefits to unemployed citizens under the Federal Trade Act of 1974, Pub. L. No. 93–618, 88 Stat. 1978 (1974). Section 46 of the Budget Act authorizes a judicial branch entity to receive and expend federal funds on behalf of the supreme court without any approval or conditions from the executive branch or its agencies. *But see* RSA 4:15 regarding executive branch agencies. Section 72 provides for medical assistance payment priorities consonant with "the applicable federal regulations." Finally, section 112 involves

the fiscal committee of the General Court as well as the Governor and Council in the creation of certain new positions under RSA ch. 124. The varieties of legislative oversight of federal funds are thus clearly evident. Section 62 of the Budget Act directs this State's participation in the Federal National Health Planning and Resources Development Act of 1974 be administered by the department of health and welfare and not in the manner provided in Executive Order 77-2, as amended. There is nothing in State law that precludes the legislature from making that decision. *See O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974).

Part II, article 56 of the New Hampshire Constitution provides that monies coming into the treasury shall not be disbursed by Governor and Council except as "agreeably to the acts and resolves of the general court." Statutes fleshing out this provision clearly support this intent. *See* RSA 4:14; 6:10; 124:1. "[I]t is clear that the governor has no authority to draw his warrant upon the treasury in a particular case, unless there is some existing act or resolve of the legislature authorizing such payment." *Opinion of the Justices,* 75 N.H. 624, 626, 75 A. 99, 100 (1910). Whenever money is due from the State because of a law, the Governor's "duty" is to draw his warrant, RSA 4:14, provided "that there be an appropriation, or equivalent direction for payment, by the Legislature. . . ." *State v. Kimball,* 96 N.H. 377, 380, 77 A.2d 115, 119 (1950); *see, e.g.,* Act of Oct. 20, 1977, ch. 600, § 46, 1977 N.H. Laws. Thus, the concern expressed in your resolution to us as to the "legal authority" under the warrant clause is answered by the fact that the questioned section renders the warranting function ministerial once the legislature has acted, as it has here. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 158, 166 (1803); *Winsor v. Hunt,* 29 Ariz. 504, 514–16, 243 P. 407, 411 (1926); *cf. Brouillard v. Governor and Council,* 114 N.H. at 547–48, 323 A.2d at 905–06. To hold otherwise would turn the warrant power into a line-item veto in contravention of N.H. Const. pt. II, art. 44. N.H. Jour. of Const. Conv. 344–61 (1974). *See generally* Note, *Protecting the Fisc: Executive Impoundment and Congressional Power,* 82 Yale L.J. 1636 (1973).

The answer to your first question is "No."

## III

*Supremacy Clause.* The supremacy clause of the Constitution, U.S. Const. art. VI, cl. 2, provides, in pertinent part, that "the

laws of the United States . . . shall be the supreme law[s] of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." The question is whether the provisions of 42 U.S.C.A. § 300m(b)(1) (Supp. 1977), when read in conjunction with the supremacy clause of the United States Constitution, preclude the legislature from requiring the Governor to designate the New Hampshire department of health and welfare's office of health planning and development as the State's sole planning agency for the purposes of the Federal Act, which reads in pertinent part:

> the Secretary [of HEW] shall enter into and renew agreements (described in subsection (b) of this section) for the designation of a State health planning and development agency for each State . . . .

42 U.S.C.A. § 300m(a). Subsection (b)(1) provides that a

> designation agreement under subsection (a) . . . is an agreement with the Governor of a State for the designation of an agency (selected by the Governor) of the government of that State as the State health planning and development agency . . . to administer the State administrative program . . . and to carry out the State's health planning and development functions . . . .

If this Federal Act precludes the legislature from creating the State health planning agency, the words, "selected by the Governor," must be read as, "selected by the Governor notwithstanding State constitutional restrictions on his authority and to the exclusion of any legislative involvement in the process." This, of course, presumes that the federal authorities, in drafting the National Health Planning and Resources Development Act of 1974, intended that the Governor of a State would select an agency for designation on his own without any legislative involvement in the process. The legislative history does not justify such a conclusion. *See* [1974] U.S. Code Cong. & Ad. News 7891–92.

The statutory scheme is clear—the State must work out the details of its commitment to health planning, presumably in compliance with the State constitution, and then enter into agreement with the federal authorities. The thrust of both the Federal Act and its predecessors is that the *State* should construct its own administrative plan and designate its planning agency. Then the Governor,

*acting as the agent of the State,* will apply for designation of that agency. The Federal Act does not confer on the Governor the right to disregard the State's constitutional processes in selecting the agency for the administration of the State health plan.

To hold otherwise would be to seriously undermine the sovereignty of our fifty States. The New Hampshire Constitution says that the "people of this state have the sole and exclusive right of governing themselves as a free, sovereign, and independent state . . ." subject only to those powers or rights "by them expressly delegated to the United States . . . ." N.H. CONST. pt. I, art. 7. Nowhere has New Hampshire delegated the authority to the federal government to dictate to us how we will organize health planning.

The policy function that gives rise to the questions before us is essential to the separate and independent existence of State government sovereignty. Consequently, if the General Court were interdicted from assigning the regulatory responsibility for health care to its chosen agency, the Federal Act would be in conflict with the policies underlying the tenth amendment to the Constitution. *National League of Cities v. Usery,* 426 U.S. 833, 845, 852 (1976). In that case, the Court struck down federal laws setting minimum wage rates for virtually all nonprofessional State employees. The Court stated that "Congress may not exercise [the commerce] power so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *Id.* at 855. Likewise in *Metcalf & Eddy v. Mitchell,* 269 U.S. 514 (1926), the Court observed that the relations of the State and federal governments under our system of federalism are such that "neither government may destroy the other nor curtail in any substantial manner the exercise of its powers." *Id.* at 523. *But cf. Edelman v. Jordan,* 415 U.S. 651, 671–73 (1974) (Congress could, by express language, force States to waive eleventh amendment immunity as condition for participating in federal matching fund programs).

█ If any doubt exists, the federal law should not be interpreted to infringe upon those powers of the States that are essential to their "ability to function effectively in a federal system." *Fry v. United States,* 421 U.S. 542, 547 n.7 (1975); *accord, National League of Cities v. Usery,* 426 U.S. at 852. As stated by the Court some years earlier:

In a dual system of government in which, under the Constitution, the states are sovereign . . . an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

*Parker v. Brown,* 317 U.S. 341, 351 (1943). Hence, we find no clear manifestation of congressional intent to override the constitutional powers of our legislature to determine which agency will be designated as the health planning office for New Hampshire. *Shapp v. Sloan,* 27 Pa. Commw. Ct. 312, 367 A.2d at 799.

The answer to the second question is therefore "No." The negative answers to the first two questions make unnecessary an answer to the third.

> WILLIAM A. GRIMES
> MAURICE P. BOIS
> CHARLES G. DOUGLAS, III

George B. Roberts, Jr., speaker of the house of representatives, by Michael R. LaFontaine, Esq., Michael F. Sullivan, Esq., and Frederick J. Griffin, Esq., filed memorandum of law.

David H. Souter, attorney general, and Anne E. Cagwin, attorney, filed memorandum listing constitutional and statutory references.