Merrimack
No. 80-020

ROBERT B. MONIER
President of the Senate and individually, *& a.*

v.

HUGH J. GALLEN, GOVERNOR

May 5, 1980

*Richard A. Hampe*, of Concord, by brief and orally, for plaintiffs Robert B. Monier and Alan D. Rock.

*Frederick J. Griffin, Jr.*, of Concord, by brief and orally, for plaintiffs George B. Roberts, Jr. and John B. Tucker.

*Paul McEachern,* legal counsel to the Governor, by brief and orally, for defendant Hugh J. Gallen, Governor.

*Thomas D. Rath,* attorney general (*Steven J. McAuliffe,* assistant attorney general, orally), for the State.

BROCK, J. This is a petition for declaratory judgment brought against Hugh Gallen, as Governor, by certain members of the General Court in their capacity as president of the senate, speaker of the house, chairman and vice-chairman of the legislative fiscal committee and as individual taxpayers. The plaintiffs seek a judicial declaration that the creation of twelve new positions within the Governor's office, proposed in connection with a federally funded comprehensive children and youth project, is unlawful absent prior legislative fiscal committee review and approval. *See* RSA 14:30-a; Laws 1979, 434:22. The case is before this court on an interlocutory transfer by the Superior Court (*Johnson,* J.) pursuant to RSA 491:17 and our Rule 9.

In March 1979, the Governor submitted "the state of New Hampshire's proposal to create a comprehensive youth service *agency*" to federal authorities. (Emphasis added.) On June 1, 1979, the Governor's office was awarded $286,000 in federal funds for that purpose by the Office of Juvenile Justice and Delinquency Prevention, Law Enforcement Assistance Administration, Department of Justice. On September 6, 1979, the Governor, pursuant to Laws 1979, 434:22, submitted a request to the legislative fiscal committee for approval of twelve new personnel positions which would result from the acceptance of the federal funds. The fiscal committee denied the Governor's request, and the Governor now seeks to establish the same positions without the approval of the fiscal committee.

On October 10, 1979, the Governor requested the executive council to approve acceptance of the federal grant under RSA 124:4. The executive council approved the fund request on October 16, and designated the office of the Governor as the appropriate recipient with certain conditions. The comptroller of the State of New Hampshire then issued a warrant appropriating funds for the grant, specifying that the funds be added to the program appropriation unit for the Governor's office. The Governor proposes to appoint to his personal staff, to supervise and to control, those persons employed to fill the positions established by receipt of the federal grant funds. In addition, the Governor

intends that these persons will not only carry out the terms of the grant, but also be assigned by the Governor the principal duties of reviewing current State policies and programs affecting the lives of New Hampshire youth, analyzing the need for alternate or additional policies or programs on a statewide basis, and advising the Governor as to the most effective means of improving and developing State policies and programs related to youth.

The questions of law transferred to this court without ruling are:

I. Do the proposed new federally funded positions in the office of the Governor related to children and youth fairly come within the meaning of the exception for the Governor's "personal staff and consultants" found in Laws 1979, 434:22 so as to make legislative fiscal committee approval of those positions unnecessary to their valid establishment?

II. If the answer to question I is "No," are the provisions of Laws 1979, 434:22 void as an unconstitutional encroachment by the legislature upon the powers vested in the chief executive by the New Hampshire Constitution?

We first consider the question of whether the establishment of the new federally funded positions relating to children and youth within the Governor's office comes within the "personal staff and consultants" exception to required legislative fiscal committee approval. Laws 1979, 434:22.

Laws 1979, 434:22 provides that "no new personnel positions, except those . . . for personal staff and consultants, may be created by the acceptance of federal monies . . . unless such positions are approved by the fiscal committee of the general court . . . ." It is clear, therefore, that the Governor, with the concurrence of the executive council, can apply for, receive and use federal funds to establish new positions on his "personal staff" without the need for fiscal committee approval. Plaintiffs claim, however, that the "personal staff and consultants" exception does not apply to the *de facto* creation of a "state agency" within the Governor's office. Relying upon legislative history, they argue that the exception was intended to apply only to persons acknowledged as being on the Governor's staff, within his office, performing administrative, receptionist and clerical tasks, not those performing essentially "agency" functions within agencies created by gubernatorial executive order.

■ Proper interpretation of this statute, Laws 1979, 434:22, requires both an understanding of its constitutional context and the history surrounding its adoption. This court has recognized the Governor's constitutional power to create "agencies" by executive order. *Opinion of the Justices*, 118 N.H. 582, 587, 392 A.2d 125, 129 (1978); *Jeannont v. N.H. Personnel Comm'n*, 116 N.H. 376, 359 A.2d 638 (1976). The exercise of that power, however, cannot "exceed the Governor's constitutional authority or conflict with appropriate legislative mandates. . . ." *Opinion of the Justices*, 118 N.H. at 587, 392 A.2d at 129; *O'Neil v. Thomson*, 114 N.H. 155, 316 A.2d 168 (1974).

The General Court, having the authority under N.H. CONST. pt. 2, art. 5, to create or abolish nonconstitutional agencies, officials or positions, enacted Laws 1979, 434:22. The effect of this statute is to place limitations upon the power of the executive branch to accept federal grants-in-aid under RSA ch. 124 when acceptance will result in the creation of new personnel positions. It was adopted as a result of the legislature's concern that the executive could, without prior legislative approval, create State agencies by executive order, thereby creating new positions entailing express or implied future burdens upon the State budget.

■ The transcript of the committee of conference on the 1978–1979 State budget contains extensive discussion by its members regarding the intent behind Laws 1977, 600:112. Such discussions can often serve as an aid to the courts in construing a statute. *See* 2A SUTHERLAND, STATUTORY CONSTRUCTION § 48.10 (4th ed. 1973). Speaker Roberts said the concern was not with personal staff but "the concern is about the creation of agencies . . . [with] some continuing obligations to pay for them." After preparing language to deal with this problem, the legislators permitted the Governor only to hire "personal staff and consultants." The president of the senate, in response to a question from Chairman Tucker of the house appropriations committee as to the "legislative intent," said that while "a new agency" would need fiscal committee approval, gubernatorial "personal staff and consultants" would not.

While recognizing the reasons for legislative concern in this area, the Governor responds that in this instance he has not created an executive order agency and argues that, unlike persons hired to fill newly created agency positions, appointees to his "personal staff" do not represent a potential burden on the State

treasury. This is so because they have no expectation of continued employment beyond the present Governor's term of office; they have no rights, privileges or permanent benefits under the classified system and are not unclassified employees subject to removal proceedings in accordance with RSA 4:1 (Supp. 1979). *Cf. Jeannont v. N.H. Personnel Comm'n*, 116 N.H. 376, 359 A.2d 638 (1976).

There is, however, in the record before us an abundance of evidence which indicates that the closely integrated positions to be created under the comprehensive youth services grant are, because of their unitary purpose, scope and number, in fact an entity more analogous to a State agency, created either by executive order or statute, than to individual members of a gubernatorial staff. The grant as approved by federal authorities pledges "complete state financial support" beginning with fiscal year 1982. Further, the program and office being created would exist for a period of three years, a period transcending both gubernatorial and legislative terms of office.

We further note that the 1979 legislature reenacted with substantial amendments specific authorization for an executive branch agency to deal with the problems of children and youth. RSA 170-D:4 (Supp. 1979) provides that the commission on children and youth shall:

> I. Research and identify the needs of children and youth in New Hampshire.

> II. Review state services and policies affecting children and youth, identify problems, and recommend solutions.

> III. Review and recommend appropriate legislative initiatives to promote the welfare of children and youth.

> IV. Assist other agencies and individuals in assessing and improving the quality and availability of services to children and youth in New Hampshire.

> V. Promote participation by young people and parents in all commission activities.

Money was appropriated and then the legislature provided in section 5 that "every effort shall be made to apply for federal funds for carrying out the purposes of RSA 170-D . . . ." Laws 1979, 472:5. These purposes closely parallel those of the grant at

issue. The scope and kind of "legislative activity" that we find here distinguishes this case from that found in *Opinion of the Justices*, 118 N.H. 582, 392 A.2d 125 (1978). It is not unlike that found to exist in *O'Neil v. Thomson*, 114 N.H. 155, 316 A.2d 168 (1974), which required us to void certain executive actions found to conflict with legislative intent.

The Governor's actions in effect create another agency to deal with children and youth, thereby circumventing the power of the legislature to oversee federal funds. *See Opinion of the Justices*, 118 N.H. 7, 15–16, 381 A.2d 1204, 1209 (1978). This court has cautioned that:

> Unless proper regard is given to the respective roles of the policy-making legislature and the administrative Governor, the "legislative branch of our State government would have little or no role to play with respect to Federal aid programs with the corollary result that the executive branch in the name of supreme executive power would not be faithfully executing the laws of this Commonwealth but rather, as it saw fit, seeking and administering Federal aid programs free of any check or balances and with little political accountability for such actions."

*Opinion of the Justices*, 118 N.H. at 15, 381 A.2d at 1209; *citing Shapp v. Sloan*, 27 Pa. Commw. Ct. 312, 367 A.2d 791, 797 (1976).

However commendable the Governor's purpose in initiating this project, the executive cannot act so as to "conflict with appropriate legislative mandates. . . ." *Opinion of the Justices*, 118 N.H. at 587, 392 A.2d at 129; *see Opinion of the Justices*, 116 N.H. 406, 413, 360 A.2d 116, 122 (1976); *O'Neil v. Thomson*, 114 N.H. at 163, 316 A.2d at 173.

■ We hold that the Governor is, in fact, creating a State "agency" under the protective umbrella of a narrow exception that is intended to apply only to his personal staff. A finding by this court that the agency established by the executive under this grant properly falls within the Laws 1979, 434:22, exception for "personal staff" would set a precedent whereby the executive could, through the tandem use of RSA ch. 124 and RSA 4:12, proceed to establish, without any legislative action or oversight, an entirely separate entity of State government on his "personal

staff." We find that such a result would be contrary to the laws of the State of New Hampshire.

The answer to the first question is "No."

We now consider the question whether the provisions of Laws 1979, 434:22 unconstitutionally encroach upon powers vested in the chief executive pursuant to N.H. CONST. pt. 2, art. 41.

In recent years, there has been a rapid and dramatic growth in federal funds coming into the State. *Opinion of the Justices*, 118 N.H. at 13, 381 A.2d at 1207. Because much of this money is received during the year-and-a-half interim when the General Court is not in session, the executive has taken a greater role in policy decisions. It was this development which, in part, resulted in the enactment of Laws 1977, 600:112 reenacted verbatim as Laws 1979, 434:22.

This court has recognized the power of the legislature to adopt legislation in order to preserve its function as the policy-making branch of our State government. *Opinion of the Justices*, 118 N.H. at 15, 381 A.2d at 1209, *citing* with approval *Shapp v. Sloan*, 27 Pa. Commw. Ct. 312, 367 A.2d 791, 797 (1976). In that opinion, this court cited the predecessor to the provision under consideration as one of a variety of legislative approaches to the structuring and spending of federal funds. *Opinion of the Justices*, 118 N.H. at 15-16, 381 A.2d at 1209.

■ It is clear that N.H. CONST. pt. 1, art. 37 provides that the three branches of government ought to be kept as "separate from, and independent of, each other, as the nature of a free government will admit." It has long been recognized in this State, however, that the three branches of government cannot be completely separate and that there must be some overlapping. *Opinion of the Justices*, 118 N.H. at 585, 392 A.2d at 127-28. With that in mind, this court has specifically found the fiscal committee of the General Court to be a proper administrative committee to act as a legislative watchdog and that said committee is not unconstitutional merely because it is composed of members of the General Court. *Opinion of the Justices*, 110 N.H. 359, 364-65, 266 A.2d 823, 826-27 (1970). In Laws 1979, 434:22, the General Court has authorized the fiscal committee to be its administrative arm for purposes of ensuring its role in policy-making.

■ ■ Because Laws 1979, 434:22 specifically exempts new positions on the personal staff of the Governor from the

requirement of fiscal committee approval, it does not constitute an unconstitutional encroachment by the legislature on the power of the chief executive to fulfill "his constitutional functions and duties." *See Opinion of the Justices*, 118 N.H. at 587, 392 A.2d at 129. The majority recognizes the issue presented is a difficult one and that any administrative activities delegated to the legislative fiscal committee come within the twilight zone of constitutionality. N.H. CONST. pt. 1, art. 37.

The answer to the second question is "No."

We are, of course, not unmindful of the need for cooperation between the legislative and executive branches of government to assure that the best interests of our State's children and youth are met.

*Remanded.*

GRIMES, C.J., and KING, J., dissented; the others concurred.

GRIMES, C.J., dissenting: Ten years ago in *Opinion of the Justices*, 110 N.H. 359, 266 A.2d 823 (1970), I expressed the opinion that the use of the fiscal committee to act as a negative upon the execution of the laws by the executive violated the constitutional principle of separation of powers. N.H. CONST. pt. 1, art. 37. I adhere to that opinion today.

KING, J., dissenting: The critical issue in this case concerns the extent to which the legislative branch of government may limit the powers of the executive branch to accept and utilize federal grants. Part 2, article 41 of the New Hampshire Constitution provides that "[t]he executive power of the state is vested in the governor. The governor shall be responsible for the faithful execution of the laws." This includes the duty to enforce legislative mandates, powers and rights. The legislature, on the other hand, has the "supreme legislative power." N.H. CONST. pt. 2, art. 2. "It has the power to make laws; to name all civil officers [with certain exceptions] and to define their duties and powers . . . ." *Opinion of the Justices*, 118 N.H. 7, 14, 381 A.2d 1204, 1208 (1978); *citing O'Neil v. Thomson*, 114 N.H. 155, 160, 316 A.2d 168, 171 (1974); *Brouillard v. Governor and Council*, 114 N.H. 541, 547, 323 A.2d 901, 905 (1974).

The three branches of government cannot be completely separate, however, and there must be some overlapping as a matter of practical and essential expediency. *Opinion of the*

*Justices*, 118 N.H. 582, 585, 392 A.2d 125, 129 (1978); *Opinion of the Justices*, 110 N.H. 359, 363, 266 A.2d 823, 825–26 (1970). The "policy-making legislature [for example] possesses some administrative power and . . . the administrative Governor may possess some subordinate legislative power, all within circumscribed limits." *Opinion of the Justices*, 118 N.H. at 585, 392 A.2d at 128. A "twilight zone" of uncertain power distribution exists in which both the governor and the legislature can concurrently operate. *Id.* at 588, 392 A.2d at 130. There is "a region of authority, therefore, alternative and concurrent, the boundaries of which are fixed by no final rule." *Opinion of the Justices*, 87 N.H. 492, 493, 179 A. 344, 345 (1935). It is not surprising that with such an unclear and undefined jurisdictional overlap, the doctrine of separation of powers has at times received conflicting interpretations by the United States Supreme Court, even from the same judges. *See* EDWARD E. CORWIN, THE CONSTITUTION AND WHAT IT MEANS TODAY, Revised by Harold W. Chase and Craig R. Ducat, p. 2 (1978).

While there are certain areas of legislative power that can be exercised only by the legislative branch of State government, there is also an area of executive power that can be exercised only by the executive branch of State government. A legislative act, for example, will be struck down if it encroaches upon the constitutional prerogatives of another branch of government under part 1, article 37 of the New Hampshire Constitution, which requires the three governmental branches to be as independent of each other as "the nature of a free government will admit." *Opinion of the Justices*, 118 N.H. 7, 14, 381 A.2d 1204, 1208 (1978), *quoting Merrill v. Sherburne*, 1 N.H. 199 (1818); *see Opinion of the Justices*, 117 N.H. 398, 374 A.2d 638 (1977) (legislative proposal to alter method of judicial appointment found to be unconstitutional infringement on executive power). As applied to the executive, the primary purpose of part 1, article 37 of the New Hampshire Constitution is to protect it from legislative encroachment. *Opinion of the Justices*, 118 N.H. at 585, 392 A.2d at 129.

While no precise analytical lines demarcate these powers, and while both the legislative and executive branches may enter the domain of the other to some extent, the constitution does establish certain irreducible residua of power that may not be invaded. *See generally* MORISON & H. COMMAGER, THE GROWTH OF THE AMERICAN PUBLIC (1942). Such is the constitutional question at issue.

The United States Supreme Court has held that the power of appointment is so distinctly an executive power that it cannot be delegated by a general assembly to a board made up of its own members. *Springer v. Government of the Philippine Islands*, 277 U.S. 189 (1928). Mr. Justice Sutherland, speaking for the Court in *Springer*, noted:

> It may be stated then, as a general rule inherent in the American Constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power. . . . The existence in the various constitutions of occasional provisions expressly giving to one of the departments powers which by their nature otherwise would fall within the general scope of the authority of another department emphasizes, rather than casts doubt upon, the generally inviolate character of this basic rule.
>
> Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions . . . .
>
> Not having the power of appointment, unless expressly granted or incidental to its powers, the legislature cannot engraft executive duties upon a legislative office, since that would be to usurp the power of appointment by indirection. . . .

*Id.* at 201-02; *see People v. Tremaine*, 252 N.Y. 27, 168 N.E. 817 (1929).

Requiring legislative fiscal committee approval before the governor may establish new federally funded positions within his office in effect transfers executive decision-making and appointment power to the legislature. If the particular legislators desire to approve the program, accept the money, and approve the personnel, it is a *fait accompli.* If they reject it, the federal grant is disapproved. The legislature, through its appropriations power, may place restrictions on the time and manner that state funds may be expended. This may, necessarily and constitutionally in some cases, limit the governor's appointment power. In the instant

case, however, the legislature cannot restrict the governor's power to accept federal funds.

In *Opinion of the Justices*, 118 N.H. 7, 15, 381 A.2d 1204, 1209 (1978), this court expressed fear that the legislature would have little or no role to play in overseeing federal funds and that the executive would be seeking and administering federal aid programs free of any checks and balances and free of any political accountability should the governor be allowed to control the distribution of federal grants. This view does not consider, however, that such federal programs are relatively short in duration and less short in total funding. Moreover, the legislature may eliminate or modify such programs as it deems prudent when state or matching funds are required. It is also significant that while the executive is effectively precluded from applying for and administering new federal funds, the University of New Hampshire or the legislature itself may exercise their power to apply for and administer similar federal funds.

The majority in the instant case places weight on the plaintiffs' argument that the grant may extend beyond the governor's term of office. This grant, however, may be terminated at the expiration of the executive's term or, in any event, by a new executive who could refuse to continue its existence. Once State money is needed to continue the grant, a legislative appropriation would be required. The legislature, thus, would have the opportunity to deny the continuation of the grant through its appropriation power.

I dissent from the majority position, and, accordingly, I would hold that the provisions of the Laws of 1979, 434:22 are an unconstitutional encroachment on the powers granted to the governor under part 2, article 41 of the New Hampshire Constitution, and constitute a violation of the principle of the separation of powers.