The Honorable Max Howell State Senator State Capitol Little Rock, AR 72201
Dear Senator Howell:
This is in response to your request for an opinion regarding House Bill 1699, as engrossed March 19, 1991. Section 1 of the bill reads as follows:
 SECTION 1. Arkansas Code 19-4-609 is hereby amended by adding a new subsection to read as follows:
 `(c) Each executive, judicial, legislative, and any other agency of the state which receives an appropriation from the General Assembly shall provide, on a calendar — monthly basis, information reflecting out-of-state travel in such detail and on such forms as determined by the Arkansas Legislative Council. In the event that any executive, judicial, legislative or other agency fails to comply with the provisions of this subsection, then no voucher for out-of-state travel shall be processed by the Auditor of State, upon notification thereof by the Arkansas Legislative Council.'
Your specific question is as follows:
 Does the provision whereby each executive, judicial, legislative or other agency provide information reflecting out-of-state travel in such detail and on forms determined by the Arkansas Legislative Council violate Article 4 of the Arkansas Constitution of 1874?
Article 4 of the Arkansas Constitution contains the so-called "separation of powers" doctrine which requires that the three branches of government (legislative, executive and judicial) remain separate and distinct, and that such separation be strictly enforced. See generally Oates v. Rogers,201 Ark. 335, 144 S.W.2d 437 (1940). Under the classic division of the powers, the legislature makes the laws and appropriates state revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws. FederalExpress Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979).
With regard to HB 1699, a requirement for the reporting of out-of-state travel does not, in my opinion, in itself violate the separation of powers doctrine. Rather, the problem lies in the bill's delegation of authority to the Arkansas Legislative Council ("Leg. Council") to determine what information will be required before vouchers will be processed. It is my opinion that this delegation of authority is unconstitutional.
The existence of any post-appropriation legislative involvement is constitutionally suspect.[1] See Ark. Att'y Gen. Op. No. 82-132. It is my opinion that the General Assembly can, however, as a general matter, require the reporting of out-of-state travel. While it is clear that the legislature cannot pre-approve or dictate expenditures of constitutional officers in other departments of state government, (Ark. Att'y. Gen. Op. No. 89-098), HB 1699 does not, on its face, purport to authorize the Leg. Council to approve or disapprove out-of-state travel. While it might be contended that the bill exhibits a "coercive influence" or that it implicates the kind of "close supervision" prohibited under separation of powers, (seeAnderson v. Lamm, 195 Colo. 437, 579 P.2d 620 (1978)), it is my opinion that the exercise of Leg. Council's authority under the bill would be determinative of this separation of powers argument. The Leg. Council cannot, through the information required and the forms developed under the bill, influence or dictate the out-of-state travel practices of the other branches without running afoul of the separation of powers doctrine. Seegenerally State ex rel Barker v. Manchin, 279 S.E.2d 622
(W.Va. 1981); Arizona Att'y Gen. Op. No. 87-107; Kansas Att'y Gen. Op. No. 90-043. This will, however, involve a question of the bill's constitutionality as applied, and will require consideration of the particular forms and the details to be reported.
Even assuming, however, that the General Assembly has the authority to require detailed information regarding out-of-state travel as a condition precedent to the issuance of vouchers, the authority delegated to the Leg. Council in this regard under HB 1699 is, in my opinion, problematic. The General Assembly may not delegate its lawmaking authority to a smaller legislative body and thereby evade a requirement for action by both houses.Opinion of the Justices, 121 N.H. 553, 431 A.2d 783 (1981);State v. A.L.I.V.E. Voluntary, 606 P.2d 769 (Alaska 1980). The prohibition against a delegation of legislative power is a necessary outgrowth of the fundamental theory of separation of governmental functions. 16 Am. Jur.2d Constitutional Law '335 (1979). The Legislature's exclusive function of legislating cannot be delegated even to its own committees or committee chairmen. New York Public Interest Research Groups, Inc. v.Carey, 383 N.Y.S.2d 197 (1976). The rule for the guidance of courts in determining the question of unlawful delegation of legislative power has been expressed as follows:
 The legislature may not delegate the power to enact a law or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose.
State v. Atlantic Coast Line Railway, 56 Fla. 617, 47 So. 969,976 (1908).
The legislative check on the other branches of government must, therefore, be exercised by the legislature acting as a whole. Ark. Att'y. Gen. Op. No. 82-132. The law does recognize, however, that there is a proper delegation where the legislation has laid down a definite declaration of policy and established criteria, standards, or guidelines for the agency to follow. Seegenerally 16 C.J.S. Constitutional Law '137 (1984);Legislative Research Commission v. Brown, 664 S.W.2d 907 (Ky. 1984) (statute found to give absolute control, without criteria or guidelines, to Legislative Research Commission over the process of seeking block grants); D'Alemberte v. Anderson,349 So.2d 164 (Fla. 1977) (no meaningful standards and guidelines in the statute for the agency to follow in regulating gifts to public officers).
While the presumed purpose of bringing some measure of accountability to the expenditure of state funds for out-of-state travel is certainly laudable, it is my opinion that HB 1699 is constitutionally deficient in failing to set forth a definite and certain policy and guidelines or criteria to be followed by the Leg. Council in determining what details will be required and on what forms. In my opinion, the bill falls within the following category of statutes found unconstitutional:
 When the statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say what the law shall be.
Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974.)
House Bill 1699 conditions the Auditor of State's processing of vouchers upon the submission of such information as is required by the Leg. Council. If the information supplied is not adequate, according to whatever is required by the Leg. Council, it seems that the Council can prevent the voucher from being processed. Through this delegation of authority, the General Assembly has opened the door for the exercise of fiscal control by a smaller legislative body, with no standards or safeguards to protect against an abuse of discretion.
The absence of guidelines or criteria results in a very broad delegation of authority to the Leg. Council over out-of-state travel by agencies within the various branches of government. It is my opinion that this delegation of authority violates the separation of powers doctrine, rendering House Bill 1699 unconstitutional.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] See generally Monier v. Gallen, 120 N.H. 333,414 A.2d 1297 (1980) ("Any administrative activities delegated to [a] legislative fiscal committee come within the twilight zone of constitutionality.")